**Herman Robert Charles CLARK, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69009.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 17, 1986.

Onion, P.J., and Campbell, J., concurred in the result.

Clinton, J., joined in judgment of the court and filed opinion.

William W. Burge, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Winston E. Cochran, Jr., Ira Jones, Asst. Dist. Attys., Houston, Robert Huttash, Austin, for the State.

## OPINION

TEAGUE, Judge.

The jury found Herman Robert Charles Clark, Jr., hereinafter sometimes referred to as Clark or the appellant, guilty of committing the offense of murder while in the course of committing the offense of burglary of a habitation owned by Joseph Edward Mc Clain. This constitutes the offense of capital murder. See V.T.C.A., Penal Code, Section 19.03. The jury answered each of the three special issues, see Art. 37.071, V.A.C.C.P, in the affirmative and the trial judge assessed the penalty of death. We affirm.

The appellant presents ten grounds of error, none of which challenge the sufficiency of the evidence pertaining either to the jury's verdict on guilt or to the jury's affirmative answers to the special issues that were submitted at the punishment stage of the trial. Therefore, we will only briefly point out the following regarding the facts that were adduced at both stages of the trial.

The record reflects that at approximately 3:00 o'clock a.m., while Mc Clain, the deceased, and his girlfriend were asleep in a bed in one bedroom of Mc Clain's apartment, with his girlfriend's son asleep in another bedroom, the appellant, armed with a pistol, forcibly entered the apartment and thereafter terrorized Mc Clain, his girlfriend, and her young son at gunpoint. While in the process of getting ready to rape Mc Clain's girlfriend, after he had burglarized the apartment, a three-way, hand-to-hand fight between Mc Clain, the girlfriend, and the appellant over the appellant's pistol ensued, during which the girlfriend was shot in the arm and Mc Clain was shot in the chest, which caused his death.

Against the wishes of his trial counsel, the appellant, whose written confession was taken notwithstanding the fact that Dunn, one of his trial counsel, strenuously, but unsuccessfully, attempted to personally persuade the appellant not to give the police a confession, which confession's validity is not challenged on appeal, testified at the guilt stage of the trial.

The appellant did not deny committing the burglary of Mc Clain's apartment. He also admitted that it was his carefully prepared objective after he broke into Mc Clain's apartment, which he just randomly selected, not only to burglarize it but to rape any female that might then be inside of the apartment. Nor did he deny stealing personal property of Mc Clain and his girlfriend, shooting Mc Clain, or attempting to rape Mc Clain's girlfriend. He claimed that when he shot Mc Clain he did not intend to kill him, but only shot him "to disable him so I could effect an escape from the scene." As to his written confession, appellant testified that he gave the confession because on the day prior to giving the confession he had ingested peyote and marihuana into his body, causing him "to be less inhibited about telling the truth," and "the time was past for lying."

On cross-examination, the State impeached the appellant with several prior felony convictions, namely, two 1966 burglary convictions for which he was sentenced to serve 5 years in the penitentiary; a 1970 burglary conviction for which he was sentenced to serve 4 years in the penitentiary; a 1972 burglary conviction for which he was sentenced to serve 10 years in the penitentiary. The record reflects that the appellant successfully served each of the sentences.

At the punishment stage of the trial, in addition to stipulated testimony regarding the appellant's above felony convictions,

the State presented evidence that established that approximately two weeks after the Mc Clain burglary-murder occurred the appellant burglarized another apartment during which he robbed the male victim and raped the female victim of that offense. The appellant also sodomized and raped the female victim's ten year old daughter. The State also introduced evidence that approximately two weeks before the Mc Clain burglary-murder, the appellant burglarized another apartment. During the course of the commission of that offense the appellant raped and sodomized the female complainant in that cause. The State also established that several months after the Mc Clain burglary-murder the appellant burglarized another apartment, and in the course of committing that offense he raped and sodomized both the complainant and her eleven year old daughter. Appellant admitted in his testimony that these were abnormal acts of human behavior. All of the victims were strangers to the appellant.

Appellant also testified at the punishment stage of the trial, again against the wishes of his trial counsel. Notwithstanding the fact that he admitted that prior to his arrest he had committed at least "sixty to seventy incidents, probably upward to one hundred crimes," Clark also testified that he was not a hardened or violent criminal. Clark testified that what "caused [him] to have antihuman behavior is that [he] developed something [he would] call the post-traumatic stress disorder, [which he believed was] a TDC syndrome, because ... being locked up in various institutions caused [him] to not experience a lot of normal things that you all experience. So, I have a different concept of society than you all do." Clark also testified that "I'm not concerned about whether I get the death penalty or a life sentence, because I'm a Buddhist. I believe in reincarnation, so I have no fear of death." Clark again denied that he deliberately caused the death of McClain. By its verdict, the jury, as was its prerogative, chose to disbelieve the appellant.

In his first three grounds of error the appellant asserts that the trial judge erred in sustaining the State's challenges for cause to Roy Dell Scott and Daisy Williams Hall, two of the venire persons, because such was in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and further erred in failing to sustain his challenge for cause to Rhonda Snider Thornton, another venire person, on the ground that she demonstrated impermissible bias against the law applicable to punishment for capital murder.

We will first review the grounds of error concerning Hall and Scott.

Hall first made it known to the trial judge that she had conscientious, moral or religious scruples against the infliction of the death sentence, even in a proper case. Hall stated that she could not then think of any type of case in which she felt that she could personally vote to assess the death penalty. The trial judge then carefully explained to Hall the procedure that would be used and then inquired whether, if the State proved beyond a reasonable doubt that the special issues should be answered in the affirmative, could she "answer them yes knowing that it would automatically result in the death sentence", and she replied in the negative.

Hall, however, soon became a "vacillating" juror, see *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981) (Teague, J. dissenting opinion), as she then stated pursuant to questioning by Thomas, one of the appellant's trial counsel, that she could answer all the special issues in the affirmative, if the evidence was there, and also stated that in some instances she felt that the death penalty was an appropriate punishment, even though she generally was opposed to it.

Jones, the prosecuting attorney, next questioned Hall. He, too, explained the procedure that would be used, and he first obtained equivocating answers to questions that he posed regarding her beliefs on the death penalty. However, Jones eventually established, at least tentatively, that Hall was not a qualified venire person:

Q: (By Jones): Do you feel you would ever be able to answer one of these questions yes knowing it would cause a death penalty?

A: (By Hall): No.

Q: Would you always answer one of them no in order to save the man's life?

A: Yes.

Q: Would you always answer one no regardless of what the evidence showed?

A: Yes.

Q: Is there any way I can talk to you, talk you out of your beliefs like that?

A: No.

Q: Is there anyway I can change your mind by showing you evidence?

A: No.

Thereafter, Thomas again questioned Hall, in order to see if he could convince her to change her mind. He succeeded! Hall almost immediately vacillated to his position and answered Thomas' questions almost diametrically opposed to the way that she had answered Jones' questions.

The trial judge then questioned Hall, and almost immediately received answers contradictory to what she had given Thomas.

At this moment in time, out of Hall's presence, the trial judge, Hon. Perry Pickett, pondered out loud, "I just wonder if we spent the rest of the afternoon with Miss Hall, going from me to Mr. Jones [the prosecuting attorney] to Mr. Thomas [defense counsel], if we would ever get an unequivocal answer to these questions."

Jones then re-questioned Hall, and succeeded in getting her to answer his questions in a disqualifying manner. Thomas then re-questioned Hall, but this time he did not succeed in rehabilitating Hall to a qualifying position as Hall made it absolutely clear that she was not only adamantly opposed to the death penalty, but that even if the evidence established that the answers to the special issues should be answered in the affirmative she could not participate in answering those questions in the affirmative.

The trial judge then sustained the prosecuting attorney's challenge for cause.

We will next discuss what led to the trial judge sustaining the prosecuting attorney's challenge for cause to venire person Scott.

Based upon Scott's answers to the questions asked, we find that he was both an equivocating and vacillating juror. He first made it known to the trial judge that he was not in favor of the death penalty, because death by lethal injection was just "a little too easy . . . [y]ou are not punishing them [as they don't have] time to think about it." He additionally advised the prosecuting attorney that he could not think of a single type case for which he would favor the death penalty: "I don't believe in killing nobody as far as that is concerned." Thereafter, when questioned by Dunn, the other defense attorney, Scott drifted to the defense side of the table in that he stated that he would give "honest" answers to the special issues. The trial judge then questioned Scott, concluding with the following question and answer: "Q: Could you under any circumstances vote for the death sentence in this capital murder case regardless of what the evidence was?" Scott: "No, sir, I don't believe I could, sir." The prosecuting attorney then questioned Scott, obtaining from him the answer that he did not believe he could answer the special issues in the affirmative knowing that such would result in the death penalty being assessed. When questioned by defense counsel Dunn, Scott testified that "Ain't no believe to it, I would say no if it's going to cause death."

The trial judge then sustained the State's challenge to Scott.

■ We affirm the trial judge's decisions to sustain the State's challenges for cause to venire persons Hall and Scott.

In *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the Supreme Court of the United States modified its opinion of *Witherspoon v. Illinois*, supra, upon which the appellant relies, which had held that potential jurors may be excused for cause only when their opposition to the death penalty is such that they automatically would vote against a sentence of

death or would be impaired in the task of determining the defendant's guilt. *Witt*, however, held that the proper test is whether the juror's views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S., at 424, 105 S.Ct. at 852. *Witt* also made it clear that the trial judge's determination that a potential juror is impermissibly biased is a factual finding. Also see *Darden v. Wainwright*, — U.S. ——, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

We have carefully examined the entire voir dire examination of the venire persons Hall and Scott in order to determine whether their views and beliefs on the death penalty would "substantially impair their performance of their duties as jurors," and find that they would. Viewing the record of the voir dire of Hall and Scott in its entirety, we hold that the trial judge did not err in sustaining the State's challenges for cause of venire persons Scott and Hall. Appellant's first two grounds of error are overruled.

Because we believe that Judge Clinton, in the "Opinion Joining Judgment of the Court" that he has filed in this cause, misinterprets much of what we have stated regarding our overruling appellant's first two grounds of error, as well as our overruling appellant's third ground of error, see *post*, we will now respond to some of his comments.

This Court has always, either expressly or implicitly, accorded *some* deference to a trial judge's position of gauging the sincerity and demeanor of a prospective juror's responses, e.g. *Franklin v. State*, 693 S.W.2d 420 (Tex.Cr.App.1985), and we will continue to do so. However, because "the prolixity of what can become the lengthiest part of a criminal proceeding," the voir dire, see *Bodde v. State*, 568 S.W.2d 344, 350 (Tex.Cr.App.1978), the demeanor and credibility of a prospective juror in such a case almost always becomes irrelevant in making the determination whether the trial judge erred in sustaining or not sustaining a particular challenge for cause. In quot-

ing in part what the Supreme Court stated in *Darden v. Wainwright*, supra, that "Witt also made it clear that the trial judge's determination that a potential juror is impermissibly biased is a factual finding," we do not mean to imply that a trial judge's ruling was entitled to *a presumption of correctness*, as Judge Clinton insinuates, nor do we intend by our statement to engraft upon our law the provisions of 28 U.S.C. § 2254(d), which governs federal habeas corpus actions, and that is one reason we did not quote verbatim what the Supreme Court had stated. However, in deciding whether a particular venire person is subject to a challenge for cause, it is always first a factual question for the trial judge to resolve whether a challenge for cause was factually good or bad. Thus, we have not "imported into our own appellate jurisprudence a federal statutory rule fashioned solely for application by federal courts in federal habeas corpus actions under federal law," as Judge Clinton erroneously believes, but have simply viewed the trial judge's decision to sustain the State's challenges for cause as resolving factual questions. However, Judge Clinton is correct when he observes that we expressly hold, although not in his words, "that the trial judge sustained the State's challenge on account of words Scott spoke—not on his behavior, bearing and demeanor," and that "[w]hen the record utterly fails to suggest that a finding is based on a determination of demeanor and credibility, we but engage in an amiable fiction by pretending to give deference to a determination never made." Thus, unless behavior, bearing, or demeanor becomes important to our decision regarding whether a trial judge correctly sustained or incorrectly sustained a challenge for cause, we will always, as we did in this cause, review such a decision with our eyes focused upon the *entire* written transcription of the voir dire interrogation of the challenged prospective juror who is held by the trial judge subject to or not subject to a challenge for cause by one of the parties. In this instance, the record clearly reflects that the decisions that Judge Pickett made were based, not

upon demeanor or determination of credibility, but upon all of the answers to the questions asked venire persons Hall, Scott, and *Thornton,* see post.

Appellant implicitly asserts in his argument under his third ground of error that the trial judge erred *as a matter of law* in failing to sustain his trial attorney's challenge for cause to prospective juror Rhonda Snider Thornton because she demonstrated an impermissible bias against the punishment for the offense of capital murder. We disagree.

Thornton advised the trial judge that she did not have any conscientious, religious or moral scruples or objections against the infliction of the death sentence in a proper case: "I just feel an eye for an eye, a tooth for a tooth [is the appropriate standard to be used in assessing punishment]." She answered all of the prosecuting attorneys' questions, from his perspective, with flying colors. However, when defense counsel questioned her, her "strong feelings" for the penalty of death, for the type of crime with which the appellant was charged with committing, caused her to state that if a person was found guilty of murder committed in the course of committing the offenses of robbery, burglary, or attempted aggravated rape she could not return other than the death sentence: "Why would anybody want to spend ninety-nine years in prison? It seems they'd rather be dead then." However, Jones, the prosecuting attorney, then brought her around to a qualifying position when she stated that if the State's evidence at the punishment stage failed, she could answer the special issues in the negative, and "wouldn't just automatically give somebody a death sentence just because [she] had convicted them [of capital murder]." One of the defense attorneys then managed to get her to come back to her earlier stated view that if she voted guilty to capital murder she would automatically vote to assess the punishment at death. The trial judge then brought her around to the view that even if she found somebody guilty of capital murder she would not automatically vote for the death penalty. Defense counsel then

made another, but successful, effort in disqualifying Thornton, "Q: My question to you is, once again, having found somebody guilty under the circumstances that we have been talking about, regardless of what the evidence is at the second stage of the proceeding, do you feel that the only proper punishment should be death?," with Thornton responding: "A: Yes, sir." The trial judge then questioned Thornton: "Q: Let me ask you, although you might not like any portion of the law, would you follow the court's instructions as to what the law is? A: I would have to." The prosecuting attorney then questioned Thornton and obtained answers that reflect that she would follow the court's instructions; that if she did not believe that the State had proved that the answers to the special issues should be answered in the affirmative she would answer them in the negative; and that she would set aside her personal beliefs regarding punishment and follow the trial court's instructions. In response to the last question asked by the appellant's counsel, "[I]s it your personal position the only proper punishment for that crime is death?", Thornton stated: *"I don't know anymore."* (Our emphasis.) Although the trial judge then stated, "I think our time is up," counsel for the appellant did not seek or attempt to ask Thornton any further questions, apparently concluding from the totality of her voir dire, that "regardless of what the evidence is, the stage of the proceedings, her personal position is that the sentence ought to always be the death sentence." The trial judge then denied the appellant's renewed challenge for cause.

It is apparent to us from the record that at the point in time when Thornton was asked the last question by defense counsel she was honestly "confused", having become so through the many, many questions that she had been asked.

Art. 35.16(c)(2), V.A.C.C.P., provides that a challenge for cause may be made by the defense if the prospective juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is

entitled to rely, either as a defense to the offense for which the defendant is being prosecuted or as a mitigation thereof *or of the punishment therefor."* (Our emphasis.)

When a prospective juror is shown to be biased against the law, *as a matter of law,* he *must* be excused when challenged, even if he states that he can set his bias aside and be a fair and impartial juror. *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Cr.App.1982). If the juror states that he believes that he can set aside any biases he may have, and the trial court overrules a challenge for cause, its decision will be reviewed in light of all of the answers the prospective juror gives. *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Cr. App.1982). In this instance, Thornton made it clear that she was adamantly "for" death as punishment for certain crimes, and repeatedly stated that she thought the death penalty was "the only proper verdict" under circumstances approximating those which were soon to be proved in appellant's trial. However, and notwithstanding her preference for imposition of the death penalty, she also testified that she would follow the trial court's instructions on the law and the evidence adduced governing the special issues. In *Pierson v. State,* 614 S.W.2d 102 (Tex.Cr.App.1981) (On original submission), this Court held that "Under *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), prospective jurors who take such a serious attitude but who nonetheless state that they can honestly determine the facts and abide by the law may not be excluded from jury service." (At p. 107). Viewing the voir dire of Thornton in its entirety, and given all of the answers that she gave to the questions asked, we are unable to state that it was established, *as a matter of law,* that she was a biased-against-the-law juror. The trial judge did not err in overruling the appellant's challenge for cause to venire person Thornton. Appellant's ground of error is overruled.

In his fourth ground of error the appellant asserts that the trial court's instruction to the jury on the offense of *murder* in its charge at the guilt stage of the trial was fundamentally erroneous because the jury was authorized to find the appellant guilty of the lesser included offense of murder without finding that he had any culpable mental state in committing the act of shooting the deceased.

We agree that the instruction was erroneous, but for reasons about to be stated do not find it be reversible error.

The appellant was charged by indictment with committing the offense of *capital murder,* with the following offenses alleged to be the underlying offenses: committing or attempting to commit robbery, committing or attempting to commit burglary of a habitation, and committing or attempting to commit aggravated rape. The trial judge instructed the jury, inter alia, that if it found "from the evidence beyond a reasonable doubt that on or about the 4th day of April, 1981, in Harris County, Texas, the defendant, Herman Robert Charles Clark, Jr., did, then and there unlawfully, while in the course of committing or attempting to commit burglary of a habitation owned by Joseph Edward Mc Clain, intentionally cause the death of Joseph Edward Mc Clain by shooting him with a firearm, then [it would] find the defendant guilty of capital murder." The jury's verdict reflects that it found the appellant "guilty of the offense of capital murder during the course of committing burglary of a habitation, as charged in the indictment."

To commit the offense of murder, the death-causing act must have been done either intentionally or knowingly, see V.T. C.A., Penal Code, Section 19.02(a)(1), or it must have been committed during the commission or attempted commission of a different felony, V.T.C.A., Penal Code, Section 19.02(a)(3), or it must have been done with the intent to cause serious bodily injury, V.T.C.A., Penal Code, Section 19.-02(a)(2).

The charge in this cause on the offense of murder, however, does not require any of these elements, requiring only a reason-

able doubt that the death was caused intentionally, i.e., the jury was instructed that if they believed the appellant caused Mc Clain's death, but had a reasonable doubt whether he did so intentionally, then [it] should find him guilty of murder, not capital murder, "regardless of whether [it found] from the evidence beyond a reasonable doubt that the defendant was then and there in the course of committing or attempting to commit [one of the three underlying felonies]." In light of what we have stated, this latter instruction was clearly erroneous. But, the jury did not convict the appellant of the offense of *murder;* it found him guilty of the greater alleged offense of *capital murder.*

In *Thomas v. State,* 587 S.W.2d 707 (Tex. Cr.App.1979), also see *Garrett v. State,* 642 S.W.2d 779 (Tex.Cr.App.1982), in which the defendant was charged by indictment and convicted of the offense of attempted murder, and complained on appeal about the trial court's instruction on the lesser included offense of aggravated assault, this Court held: "When the jury found that the appellant was guilty of criminal attempt to commit murder it had no occasion to deliberate whether the appellant was guilty of the lesser included offense [of aggravated assault]. The errors in the charge on the lesser included offense, for which the appellant was not convicted, could not so have misled the jury as to constitute fundamental error." (At pp. 708–709). Also see *O'Pry v. State,* 642 S.W.2d 748, 765 (Tex. Cr.App.1982) (Opinion on State's and Appellant's motions for rehearing) Held, "[O]nce the jury convicted appellant of capital murder, having been properly charged as to that offense, it had no occasion to consider whether appellant might be guilty of felony murder ... Moreover, if the jury acted 'as directed,' as we presume they did, they stopped after finding appellant guilty of capital murder, because they did not have a reasonable doubt that would require them to consider further."

We adhere to the logic applied in the above cases and overrule appellant's ground of error.

Clark in his fifth ground of error claims that the trial judge should have admonished him about the dangers and disadvantages of self-representation. For authority, he relies upon *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in which the Supreme Court held that if an accused person timely and properly invokes his right to represent himself reversible error will result if the trial judge refuses his demand for self-representation. Also see *Johnson v. State,* 676 S.W.2d 416 (Tex.Cr.App.1984).

After carefully reviewing the record, we do not find where the appellant ever actually made demand of the trial judge that he be permitted to personally represent himself, but only find that at times the appellant was permitted to personally inject himself and his views into the case.

This Court has held that if there is hybrid representation the trial court is not required to admonish an accused concerning the dangers and disadvantages of self-representation. See *Maddox v. State,* 613 S.W.2d 275, 286 (Tex.Cr.App.1980); *Phillips v. State,* 604 S.W.2d 904, 908 (Tex.Cr. App.1979). Appellant's ground of error is overruled.

Appellant complains in his sixth ground of error that the trial judge should have declared a mistrial because during the trial several of the jurors saw him in handcuffs. It is true that several of the jurors testified that they saw the appellant in handcuffs outside of the courtroom. However, the record also shows that what the jurors saw was inadvertent and fortuitous. Each juror who testified at the hearing on appellant's motion for new trial that he saw the appellant in handcuffs also testified that this was never discussed with the other jurors nor did it affect his decisions on guilt and punishment.

While it is now axiomatic that requiring an accused person to wear handcuffs before the jury infringes his constitutional presumption of innocence, see *Moore v. State,* 535 S.W.2d 357 (Tex.Cr.App.1976), and all efforts should be maintained to see

that this does not ever occur, unless there is a showing of "exceptional circumstances" or a "manifest need" for such restraint, *Cline v. State*, 463 S.W.2d 441 (Tex.Cr.App.1971); *Gray v. State*, 99 Tex. Cr.R. 305, 268 S.W. 941 (Tex.Cr.App.1942); *Gammage v. State*, 630 S.W.2d 309, 313 (Tex.App.-San Antonio 1982); *Rainey v. State*, 20 Tex.App. 455 (1886), it is also true that a momentary, inadvertent, and fortuitous encounter away from the courtroom between a handcuffed accused and one or more of the jurors does not necessarily call for a mistrial or reversal. See *Wright v. Texas*, 533 F.2d 185 (5th Cir.1976).

In this instance, although some of the jurors saw the defendant handcuffed outside of the courtroom, there is no evidence that this was discussed by the jurors who saw him handcuffed with the other jurors who did not see him handcuffed or that this influenced or affected any of the jurors who saw him handcuffed in their decisions on guilt or punishment. Appellant's ground of error is overruled.

The appellant's seventh ground of error concerns what occurred on the 16th day of jury selection, at a point when 10 jurors had been selected. The appellant, relying upon the provisions of Art. 20.22, V.A.C.C.P., which provides that *"The fact of a presentment of indictment by a grand jury shall be entered upon the minutes of the court,* noting briefly the style of the criminal action and the file number of the indictment, but omitting the name of the defendant, unless he is in custody or under bond,"* (our emphasis), filed a hand-written motion to quash the indictment in this cause, which motion stated in part "that there is no record that at least 9 members of the grand jury went in a body in open court and through the foreman delivered said indictment to the Judge of the court nor are there any entries in minutes of the court as they might relate to said indictment." The motion was overruled by the trial judge without a hearing. In light of the delay that the lack of a hearing on this point has caused this Court, the trial judge should have conducted a hearing.

Appellant asserts that because the fact of the presentment of the indictment in this cause by the grand jury was not entered upon the minutes of the trial court the trial judge erred in overruling his motion to quash.

After perusing the documents in the record of appeal that were transmitted to this Court by the District Clerk of Harris County, that pertain to this ground of error, this Court concluded that it was obvious, because of the numbers on the pages of the documents, that the record might be incomplete and, pursuant to the provisions of Art. 40.09, Sections 7 and 12, V.A.C.C.P., entered an order on September 30, 1985, ordering the District Clerk of Harris County to ascertain whether or not there were any other documents that might reflect or indicate that the indictment in this cause was properly entered upon the minutes of the trial court, as required by the provisions of Art. 20.22, supra.

The record has now been supplemented to reflect that the provisions of Art. 20.22, supra, were in all things complied with. The fact of the presentment of the indictment of the grand jury was entered upon the minutes of the court.

Appellant's ground of error is overruled.

■ Appellant asserts in his eighth ground of error that Hon. Perry Pickett, a retired district judge of Midland County, who presided over the trial of this cause, lacked authority to preside because he had not been elected by the voters of Harris County. Based upon this Court's past decisions, this contention is totally without merit. See, for example, *Alfaro v. State*, 638 S.W.2d 891 (Tex.Cr.App.1982); *Foreman v. State*, 505 S.W.2d 564 (Tex.Cr.App. 1974); *Peach v. State*, 498 S.W.2d 192 (Tex. Cr.App.1973); *Lewis v. State*, 481 S.W.2d 139 (Tex.Cr.App.1972); *Buchanan v. State*, 471 S.W.2d 401 (Tex.Cr.App.1971). Also see Art. 5, Section 7, Texas Constitution, and Art. 200a, V.A.C.S. By virtue of the constitutional and statutory law of this State, Judge Pickett was duly authorized to preside over the appellant's trial. Appellant's ground of error is overruled.

■ In his last two grounds of error, appellant asserts that Art. 37.071, V.A.C. C.P., is unconstitutional because it fails to "provide adequate procedural safeguards by merely permitting the defendant to present all relevant mitigating factors at the punishment stage of the trial, without insuring that the jury, under appropriate instructions from the trial court, consider and weigh these mitigating factors in answering the punishment questions," and because the jury was not so instructed he has been denied his rights under the Eighth and Fourteenth Amendments to the Federal Constitution. We disagree.

The record reflects that the appellant did not object to the charge on punishment, nor did he submit any requested instructions.

A majority of this Court has long held that it is not error, constitutional or otherwise, not to instruct the jury as the appellant suggests, and to repeat here what has been stated on the issue would simply unnecessarily elongate this opinion, which we decline to do. See, however, *Penry v. State,* 691 S.W.2d 636 (Tex.Cr.App.1985); *Stewart v. State,* 686 S.W.2d 118 (Tex.Cr. App.1984); *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Quinones v. State,* 592 S.W.2d 933, 947 (Tex. Cr.App.1980), cert. denied 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *O'Bryan v. State,* 591 S.W.2d 464, 475 (Tex.Cr.App. 1979). Furthermore, the Fifth Circuit has held that "The Constitution requires no more [in the way of instructions than given here]." (387). *O'Bryan v. Estelle,* 714 F.2d 365 (5th Cir.1983), cert. denied, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Cf. *Green v. State,* 682 S.W.2d 271, 287 fn. 4 (Tex.Cr.App.1984), cert. denied 470 U.S. 1034, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985). Appellant's ground of error is overruled.

Having overruled all of the appellant's grounds of error, the judgment of the trial court is affirmed.

ONION, P.J., and CAMPBELL, J., concur in the result.

CLINTON, Judge, joining judgment of the court.

In examining *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), the majority opinion says, "*Witt* also made it clear that the trial judge's determination that a potential juror is impermissibly biased is a factual finding." The statement is almost but not quite verbatim what the Supreme Court said in *Darden v. Wainwright,* —— U.S. ——, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), *viz:*

"*Witt* also made clear that the trial judge's determination that a potential juror is impermissibly biased is a factual finding *entitled to a presumption of correctness under 28 U.S.C. § 2254.*"[1]

While federal appellate courts have long recognized a similar approach when addressing "the ruling below upon such a question of fact," e.g., *Reynolds v. United States,* 98 U.S. (8 Otto) 145, 156–157, 25 L.Ed. 244 (1879), the rule in federal habeas actions is that "a federal reviewing court is *required* to accord any findings of the state courts on 'factual issues' a 'presumption of correctness' under 28 U.S.C. § 2254(d)." *Wainwright v. Witt,* 469 U.S. at 426, 105 S.Ct. at 853.

Thus once again a majority would have this Court import into our own appellate jurisprudence a federal statutory rule fashioned solely for application by federal courts in federal habeas corpus actions under federal law. We do not have a comparable legislative or judicially promulgated rule.

When the challenge comes from the State, that in actual practice trial judges have not been making findings based on determinations of demeanor and credibility of a venireperson is reflected in scores of records reviewed by this Court. Typical, as attributed to him in the majority opinion, is the exasperation expressed by the trial judge in this cause, thereby revealing he did not make such a determination, *viz:*

"I just wonder if we spent the rest of the afternoon with Miss Hall, going from me to Mr. Jones to Mr. Thomas, if we would

---

**1.** *All emphasis is mine throughout unless other-* wise indicated.

ever get an unequivocal answer to these questions."

According to the majority, only when counsel for appellant "did not succeed in rehabilitating Hall [in that she] made it absolutely clear to him .... that even if the evidence established that the answers to the special issues should be answered in the affirmative she could not participate in answering those questions in the affirmative," did the trial judge sustain State's challenge for cause.

Similarly, although the majority takes it upon itself to "find" that Scott was "both an equivocating and vacillating juror," the thrust of voir dire examination it summarizes leaves no doubt that the trial judge sustained the State's challenge on account of words Scott spoke—not on his behavior, bearing and demeanor.

When the record utterly fails to suggest that a finding is based on a determination of demeanor and credibility, we but engage in an amiable fiction by pretending to give deference to a determination never made.

Strangely enough, when it comes to a challenge for cause made by accused to venireperson Thornton, the majority drops all pretense. Here the challenge for cause under Article 35.16(c)(2), V.A.C.C.P. is for bias or prejudice against any germane law on which an accused is entitled to rely. "It is apparent to us from the record," says the majority, that Thornton became "honestly 'confused.'" Now, however, bias must be established *"as matter of law,"* and should the trial court overrule the challenge, "its decision will be reviewed in light of *all the answers the prospective juror gives.*" No deference to demeanor or determination of credibility here; though it does not say so, that the majority searches for error through abuse of discretion is indicated by its citing *Anderson v. State,* 633 S.W.2d 851, 854 (Tex.Cr.App.1982).

With respect to ground of error four, interestingly the majority pretermits an evaluation of error under *Almanza v.*

State, 686 S.W.2d 157 (Tex.Cr.App.1985). I agree that since *Almanza,* precedents such as *Thomas v. State,* 587 S.W.2d 707 (Tex. Cr.App.1979), and its follower, *Garrett v. State,* 642 S.W.2d 779 (Tex.Cr.App.1982), have not lost their vitality. To argue otherwise fails to comprehend the essence of *Almanza:* that finding unobjected "fundamental error" in a charge to a jury no longer constitutes *automatic* reversible error.[2] The error must be so egregious AND create such harm that an accused is denied a fair and impartial trial—in short, "egregious harm." If it finds an alleged error is not egregious, a reviewing court need not search the record for "egregious harm."

Furthermore, even a flagrant error may be so situated that one can readily ascertain whether it is "calculated to injure the rights of the appellant *to the extent that* he has not had a fair and impartial trial." *Almanza,* at 172, quoting from and adding emphasis to *Ross v. State,* 487 S.W.2d 744, 745 (Tex.Cr.App.1972). See *Lawrence v. State,* 700 S.W.2d 208, 218 (Tex.Cr.App. 1985) (Dissenting Opinion). Just as there are "some errors so egregious that such [an *Almanza* ] review will not save them," *ibid.,* also there are some flagrant errors so patently *not* calculated to injure the rights of an accused that much of an *Almanza* review becomes redundant.

*Almanza* pointed out that when the error claimed is omission of an entire element from *the* authorization paragraph, "the Court has reviewed not only the entire charge, but also the state of the evidence in the case, before deciding whether the error was so harmful as to require reversal." *Id.,* at 172. However, there will be instances where settled principles dictate that a review of the charge as a whole is enough to demonstrate that an error, though egregious, did not create such harm as to deny a fair and impartial trial, so that the state of evidence cannot alter that determination. This is just such a case.

The majority finds that in charging on the lesser included offense of murder the

---

**2.** In *Cumbie v. State,* 578 S.W.2d 732 (Tex.Cr. App.1979), the Court catalogued errors previously deemed fundamental and thus reversible. *Almanza* overruled *Cumbie,* but only "[t]o the

extent it holds charge error requires 'automatic' reversal." The catalogue of errors remains intact, albeit every one will not necessarily be regarded as egregious.

trial court failed to instruct the jury on requisite culpable mental states. *Thomas v. State* and *Garrett v. State*, both supra, agree:

> "[When the jury found an accused guilty of a greater offense] it had no occasion to deliberate whether the [accused] was guilty of · the lesser included offense. The errors in the charge of the lesser included offense.... could not so have misled the jury as to constitute fundamental error."

Therefore, neither state of evidence, argument of counsel nor any other information in the record of trial as a whole "may illuminate the actual .... harm to the accused." *Almanza*, at 174. Those matters are superfluous in this situation, so an *Almanza* exercise is not worth the candle.

Finally, the majority says appellant had the hybrid representation he is not entitled to have according to *Landers v. State*, 550 S.W.2d 272 (Tex.Cr.App.1977); but not to worry because appellant never demanded his right to selfrepresentation in the first place. Since appellant did not invoke his right under *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), I fail to see how hybrid representation is in the case, but if it is we ought to reexamine *Landers v. State*, supra.

With those observations I join the judgment of the Court.