ACCEPTED
06-14-00097-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/18/2015 5:33:06 PM
DEBBIE AUTREY
CLERK

NO. 06-14-00097-CR

_____

IN THE COURT OF APPEALS SIXTH DISTRICT

AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
2/18/2015 5:33:06 PM
DEBBIE AUTREY
Clerk

_____

WILLIE FRANK JACKSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

APPEAL IN CAUSE NUMBER 29,295

IN THE 354TH JUDICIAL DISTRICT COURT

OF HUNT COUNTY, TEXAS

_____

BRIEF FOR APPELLANT

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now the Appellant and submits this brief pursuant to the provisions of the Texas Rules of Appellate Procedure in support of his request for the judgment of conviction to be overturned in Cause No. 29,295 or remanded for a new trial.

Appellant Request Oral Argument

# IDENTITY OF PARTIES AND COUNSEL

Appellant's Attorney:
Jason A. Duff
2615 Lee Street
P.O. Box 11
Greenville, Texas 75403-0011

Appellant's Trial Attorney:
Katherine A. Ferguson
2900 Lee Street
P.O. Box 21
Greenville, Texas 75403

Appellee:
The State of Texas by and through
Noble Walker
Hunt County District Attorney
4th Floor Hunt County Courthouse
2500 Lee Street
Greenville, Texas 75401

Appellee's Trial Counsel:
Lauren Hudgeons
Hunt County District Attorney's Office
4th Floor Hunt County Courthouse
2500 Lee Street
Greenville, Texas 75401

# TABLE OF CONTENTS

Identity of the Parties and Counsel ...............................................................2

Table of Contents ..................................................................................3

Index of Authorities ..............................................................................4

Statement of the Case ...............................................................................6

Issues Presented ....................................................................................7

Statement of the Facts...............................................................................8

Summary of the Argument ............................................................................12

Argument and Authorities ...........................................................................13

**Issue Number One**................................................................................13
The evidence is legally insufficient to prove beyond reasonable
doubt, that Jackson committed Aggravated Robbery.

**Issue Number Two**...............................................................................17
The trial court erred by allowing Appellant to be restrained
during the trial.

Prayer for relief ..................................................................................21

Certificate of compliance of typeface and Word Count............................................22

Certificate of Service...............................................................................23

# INDEX OF AUTHORITIES

**FEDERAL CASES:**

*Deck v. Missouri*, 544 U.S. 622 (2005)..................................................... 18

*Jackson v. Virginia,* 443 U.S. 307(1979). ............................................... 13


**STATE CASES:**

*Banks v. State*, 471 S.W.2d 811, 812 (Tex.Crim.App.1971)...................... 14

*Clark v. State*, 717 S.W.2d 910, 919 (Tex.Crim.App.1986) ....................... 17

*Glasscock v. State*, 061312 TXCA6, 06-11-00239-CR *(mem. opinion)*..... 17

*Laster v. State,* 275 S.W. 3d 512 (Tex. Crim. App. 2009) ......................... 13

*Long v. State,* 823 S.W.2d 259 (Tex.Crim.App. 1991) .............................. 14

*Louis v. State*, 159S.W.3d 236 (Tex. App.—Beaumont 2005, pet.ref'd) .... 16

*Navarro v.State*, 810 S.W.2d 432 (Tex. App.—San Antonio 1991, pet. refd

*Reedy v. State*, 214 S.W. 3d 567 (Tex. App.—Austin 2006) ..................... 16

*Shelton v. State*, 795 S.W.2d 162, 167 (Tex.Crim.App.1989) ................... 16

*Snowden v. State*, 353 S.W.3d 815, 821-22 (Tex. Crim. App. 2011)......... 16

*Urbano v. State*, 837 S.W.2d 114, 116 (Tex.Crim.App. 1992)................... 14

*Vodochodsky v. State,* 158 S.W. 3d 502, (Tex. Crim. App. 2005). ............ 33

*Washington v. State* 127 S.W. 3d 197 (Tex. App. Houston [1st Dist.] 2003, pet. dism'd). ............................................................................................. 13

**STATE STATUTES:**

TEX. PEN. CODE ANN. § 6.03(a)&(b) (Vernon 2012) .............................. 15

TEX. PEN. CODE ANN. § 31.01(2). (Vernon 2012) ................................. 16

TEX. PEN. CODE ANN. § 31.03(a) (Casemaker 2014) ........................... 14

TEX. PEN. CODE ANN. § 31.03(a) (Casemaker 2014) ........................... 14

TEX. PEN. CODE ANN. § 29.02(a)(2) (Casemaker 2014) ........................ 14

TEX. PEN. CODE ANN. § 29.03(a)(1)(2)( Casemaker 2014).................... 14

## STATEMENT OF THE CASE

This is an appeal of the judgment and sentence in a five criminal cases for the 354th Judicial District, in Hunt County, Texas. Appellant was convicted by a jury of Aggravated Robbery

Appellant was assessed a sentence of 90 years by a Jury. Notice of appeal was given on May 14, 2012. The clerk's record was filed on September 10, 2014; the reporter's record was filed on November 25, 2014.

## ISSUES PRESENTED

**Issue One:**     The evidence is legally insufficient to prove beyond reasonable doubt, that Jackson committed Aggravated Robbery by use of Deadly Weapon against the victim.

**Issue Two:**     The trial court erred by allowing Appellant to be restrained during trial.

## STATEMENT OF THE FACTS

The victim, Steven Cook testified on May 21, 2013 he went to the store and on his return to his apartment complex saw the Appellant in a corridor. (RR Vol. 10 p. 17). Cook had known Appellant from previous encounters and believed that the two were friends at the time. When Appellant approached Cook's truck in the parking lot of the apartment complex, Cook was not concerned. Cook testified that as he exited is truck that night, Appellant pulled a gun from out of an oven mitt and stuck him in the face with that pistol. (RR Vol. 10 p. 20-21). Cook then stated that Appellant then pointed the gun at him and pulled the trigger and it "clicked." Cook went on to testify that Appellant then shot him in the leg, and did not understand or know what appellant wanted. (RR Vol. 10 p. 21). Cook stated that the fracture of his nose and the pain, that he could hardly see. (RR Vol. 10 p. 75). Cook stated that Appellant then went into his truck and took Cook's wallet and stuff out of the console. Cook stated that Appellant gave no other indication why Appellant acted as he did. (RR Vol. 10 p. 25-27). Cook, after being shot did not call the police for reasons that included their friendship. Cook also did not go to the hospital initially because he did not think his wounds were really that big at that time. (RR Vol. 10 p. 28).

8

While Cook was nursing his wounds he sent his friend Damien to find his wallet and phone but, Damien was not able to locate them. (RR Vol. 10 p. 29). Later Cook stated his keys were missing but his truck was never moved, and when he looked in his truck his wallet was missing. (RR Vol. 10 p. 35). Upon further search Cook found his phone, and later found his wallet. Cook stated that forty dollars were missing and Cook never found his gun. (RR Vol. 10 p. 37). Cook later testified that the gun he earlier stated was missing was owned by another person named Watson Stevens left a gun (RR Vol. 10 p. 55).

During the Punishment phase of the trial the State attempted to introduce evidence of Appellant's tattoos. During that process the jury was made aware that Appellant was wearing a Electronic Immobilization device or as referred to at trial, a stun belt. The following excerpt of the record demonstrates the jury's exposure to Appellant's stun belt:

MS. HUDGEONS: Well, before we go into what those pictures reflect, I'll go ahead and offer State's Exhibits Nos. 21 through 25.

*(State's Exhibit Nos. 21, 22, 23, 24, 25 offered)*

MS. FERGUSON: Your Honor, at this time I'm going to object. He has -- he's not the proper person to authenticate those photos. He's not the person who took them. He's not the person whose met my client. He said he's never met my client. He is not the proper person to authenticate those photographs.

MS. HUDGEONS: Well, I'll do two things, Your Honor.

Q (By Ms. Hudgeons) First, I'll ask you to look at State's Exhibits No. 21 and ask if you're able to identify if that picture that includes a face is the same person as the defendant, who is sitting at defense counsel's table?

A Yes, it is.

Q Okay. In addition, if the defense continues to have objection, then I'll ask: Since the defendant --

MS. FERGUSON: Objection to sidebar, Your Honor.

THE COURT: Sustained.

Q (By Ms. Hudgeons) Then I would ask that the defendant remove his shirt and show the jury so that they can all properly authenticate it if he's going to refuse to take his shirt off to show the witness.

MS. FERGUSON: You want to take your shirt off --

MS. HUDGEONS: We can do that in private or in front of the jury.

THE COURT: All right.

MS. FERGUSON: So do you want to do it in front of the jury or do you want to do it in just a little bit?

DEFENDANT: I'll do it right there in front of the jury. It don't matter.

THE COURT: All right. If you'll step over here and raise your shirt and show them your tattoos.

MS. FERGUSON: Hold on, Your Honor, just a second. Can we approach?

Just a second, Mr. Jackson.

*(Discussion at the Bench, on the record)*

MS. FERGUSON: They put a shock belt --

MS. HUDGEONS: If he's willing to take his shirt off, then let him take his shirt off.

MS. FERGUSON: No. No. No. No. No. What I'm saying is --

THE COURT: He's already taken his shirt off.

MS. FERGUSON: Huh?

THE COURT: His shirt's off.

MS. FERGUSON: Oh, Nevermind. Nevermind.
*(Open court, defendant and jury present)*

THE COURT: All right. If you'd step over in front of the jury, sir.

(Excerpt from RR Vol. 11 p. 34-36)
Appellant is not considered by TDC to be a member of a security threat

group. (RR Vol. 11 p. 50).

# SUMMARY OF THE ARGUMENTS

**Issue One:** The evidence is legally insufficient to prove beyond reasonable doubt, that Jackson committed Aggravated Robbery.

**Issue Two:** The trial court erred by allowing Appellant to be restrained during trial.

**ARGUMENT**

**Issue One:** The evidence is legally insufficient to prove beyond reasonable doubt, that Jackson committed Aggravated Robbery by use of Deadly Weapon against the victim Steven Cook in trial cause No. 26,975.

In a criminal case, an appellant may raise legal sufficiency for the first time on appeal. *Washington v. State* 127 S.W. 3d 197 (Tex. App. Houston [1st Dist.] 2003, pet. dism'd). When reviewing legal sufficiency of the evidence, a court must look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319; *Vodochodsky v. State,* 158 S.W. 3d 502, (Tex. Crim. App. 2005). While giving the proper deference to the factfinder's role this court must safeguard against the rare occurrence when a factfinder does not act rationally. *Laster v. State,* 275 S.W. 3d 512 (Tex. Crim. App. 2009).

The Texas Penal Code defines robbery as: a person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he… intentionally or knowingly threatens or places another in fear of imminent bodily injury or

13

death. Tex. Penal Code Ann. § 29.02(a)(2), (Vernon 2012). The offense becomes aggravated if the person causes serious bodily injury to another or "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(1)(2), (Vernon 2012).

In this case the State failed to prove that Appellant acted with the intent to deprive the owner of the property. A jury could only have speculated that Jackson intended to either deprive Cook of forty dollars or a gun belonging to another person. There was a complete lack of evidence at trial to prove the essential element of theft as a part of the robbery.

The Texas Penal Code defines theft as when, "[a] person commits an offense if he unlawfully appropriates property with the intent to deprive the owner of property. Tex. Pen.Code Ann. § 31.03(a). (Casemaker 2014). Appropriation of property is unlawful if it is without the owner's effective consent. Tex. Pen.Code Ann. § 31.03(b)(1). (Casemaker 2014). Effective consent includes consent by a person legally authorized to act for the owner not induced by deception or coercion. Tex. Pen.Code Ann. § 31.0a(3). (Casemaker 2014). The fact finder determines intent to deprive from the words and acts of the accused. *Banks v. State*, 471 S.W.2d 811, 812 (Tex.Crim.App.1971).

The state must prove that Defendant acted with a conscious objective or desire to cause the result, or that he was aware that his conduct was

14

reasonably certain to cause the result. Tex. Penal Code Ann. § 6.03(a)&(b) (West 2011).

Deprivation of property occurs when property is withheld from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner, or when property is restored only upon payment of a reward or compensation, or when property is disposed of in a manner that makes recovery of the property to the owner unlikely. Tex. Pen.Code Ann. § 31.01(2) (Casemaker 2003).

Here the victim testified that Appellant shot him in the leg first, and did not understand or know what Appellant wanted at that point in time. (RR Vol. 10 p. 21). Moreover, Cook testified that he could barely see after the encounter with Appellant. After the encounter Cook allowed others to enter his truck and his property was later recovered after being out in the open for a period of time. There is no definitive evidence of Appellants later posession of a gun or forty dollars. Even if Appellant was found to have forty dollars there is no evidence that it was the forty dollars belonging to the victim. The only weak link of appellant to a theft is that Cook stated he heard Appellant ask him where his wallet was. (RR Vol. 10 p. 28-38).

Proof that amounts to only a strong suspicion of guilt or a mere probability of guilt is insufficient to sustain a conviction. *Urbano v. State*, 837 S.W.2d 114, 116 (Tex.Crim.App. 1992); *Navarro v.State*, 810 S.W.2d 432, 435 (Tex. App.—San Antonio 1991, pet. refd).

If circumstantial evidence provides no more than a suspicion, the jury is not permitted to reach a speculative conclusion. *Louis v. State*, 159S.W.3d 236, 246 (Tex. App.—Beaumont 2005, pet.ref'd). It is the function of appellate courts to ensure that no one is convicted of a crime except upon proof beyond a reasonable doubt. *Shelton v. State*, 795 S.W.2d 162, 167 (Tex.Crim.App.1989). Due process requires no less. *Reedy v. State*, 214 S.W. 3d 567 (Tex. App.—Austin 2006).

There is insufficient evidence to prove beyond a reasonable doubt that Jackson committed aggravated robbery as alleged. Based on the evidence presented at trial the state did not prove the essential element of theft. The state presented evidence of an altercation between the victim and Appellant but it did not cross the threshold to prove that the conduct was during a theft or that Appellant had the requisite intent to deprive Cook of property. There was evidence of a shooting but after that shooting the record reflects the victim had difficulty seeing that other persons had access to victim's truck, where his wallet, phone and ".22 gun" were after

16

the shooting and that the victim's wallet and phone were in the open truck or on the ground for a period of time. The evidence does not prove beyond a reasonable doubt Appellant was the one who deprived victim of is property or that Appellant had the intent to deprive Cook of those items. Concluding so, based on the evidence presented at trial, would have been speculation by the factfinder.

**Issue Two: The trial court erred by allowing Appellant to be restrained during trial.**

In this case it is clear from the record that the jury viewed Appellant shirtless and with a shock belt restraint. (RR Vol. 11 p. 34-36) Courts, have held that the harm a defendant suffers when the jury sees him in handcuffs or shackles is that his constitutional presumption of innocence is infringed, *Long v. State,* 823 S.W.2d 259 (Tex.Crim.App. 1991) All efforts should be maintained to prevent the jury from seeing the defendant in shackles, except where there has been a showing of exceptional circumstances or a manifest need for such restraint. *Clark v. State*, 717 S.W.2d 910, 919 (Tex.Crim.App.1986). To that end an electronic restraint device by its inherent nature and appearance is worse than shackles.

17

Appellant urges this Court to find that the trial court abused its discretion to allow a defendant to attend a punishment phase of trial wile a shock belt because it did not make specific findings on the record to justify the restraints. This court examined this issue out of Hunt County in *Glasscock v. State*, 061312 TXCA6, 06-11-00239-CR *(mem. opinion).* In that case, the appellant was made to wear shackles and prison attire during the punishment phase of his trial. To that end a shock belt, as stated by Appellant's trial attorney was visible. (RR Vol. 11 p. 34-36).

The Court directed Appellant to lift his shirt for the jury could see his tattoos, and trial counsel attempted to stop those actions. (RR Vol. 11 p. 34-36). But here the situation is distinguished from many cases cited relating to this issue because the jury viewed the shock belt. "The appearance of the offender during the penalty phase in shackles . . . almost inevitably implies to a jury . . . that court authorities consider the offender a danger to the community. . . ." *Deck v. Missouri*, 544 U.S. 622 (2005). Yet, at the punishment phase of trial the there was evidence that Appellant is not considered by the Texas Department of Criminal Justice to be a member of a security threat group. (RR Vol. 11 p. 50). Moreover, Appellant's could be construed to rebut Appellant's presumption of innocence for crimes or extraneous bad acts.

Because of the Constitutional implications of Appellants innocence to other acts and his dangerousness, even if the trial court had just discovered that he was wearing a shock belt then findings should have been made at that point. Appellant urges that because of the nature of the error a constitutional analysis is necessary. Courts consider (a) the nature of the error, (b) the extent emphasized by the State, (c) the probable collateral implications, and (d) the weight jury may have given the error in their deliberations. *Snowden v. State*, 353 S.W.3d 815, 821-22 (Tex. Crim. App. 2011).

In the case at bar the, the probable collateral implication is that the Jury gave Appellant a sentence of 90 years instead of some other lessor sentence. Appellant argues that this case is much worse than a case where defendant is shackled because of the inherent method of use of a shock belt to administer pain to the Appellant. All of which is possible for the jury to see and know that at any moment Appellant could be shocked. Consequently, the shock belt by its very nature de-humanizes the Appellant and can be likened to a shock collar on an animal. Therefore a jury more than likely weighted the belt much more so than regular shackles and in turn given an error in their deliberations. If this Court rejects Appellant's

other issues Appellant urges this Court to award at least a new trial on punishment based on this issue.

## **PRAYER FOR RELIEF**

Wherefore, premises considered, Appellant respectfully prays that his convictions in the above entitled and numbered causes be reversed and acquit him.  Appellant further prays for all other lawful relief to which he may be entitled, at law or in equity.

Respectfully submitted,


___**/s/ Jason A. Duff**_____
Jason A. Duff
State Bar No. 24059696
2615 Lee Street
P.O. Box 11
Greenville, TX  75403-0011
jasonaduff@hotmail.com
Attorney for the Appellant

**CERTIFICATE OF COMPLIANCE OF TYPEFACE AND WORD COUNT**

In accordance with Texas Rules of Appellate Procedure 9.4 (e) and (i), the undersigned attorney or record certifies that Appellants Brief contains 14-point typeface of the body of the brief, 12-point typeface for footnotes in the brief and contains 2,478 words, excluding those words identified as not being counted in appellate rule of procedure 9.4(i)(1), and was prepared on Microsoft Word 2010.

_____**/s/ Jason A. Duff**_____
Jason A. Duff
Attorney for the Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to Hunt County District Attorney Noble Walker, P.O. Box, 1097, Greenville, Texas 75403, on this the 18th day of February, 2014, and to the Court of Appeals in Texarkana via electronic filing system.

_____/s/ Jason A. Duff_____
Jason A. Duff
Attorney for the Appellant