**Affirmed and Memorandum Opinion filed October 29, 2019.**



**In The**

# Fourteenth Court of Appeals

_____

**NO. 14-18-00818-CR**

_____

**GERALD GENE GREEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1599418**

## MEMORANDUM OPINION

Appellant raises two complaints in this appeal from a conviction for manslaughter: first, that some members of the jury saw him outside the courtroom in shackles; and second, that the prosecutor elicited testimony about his post-arrest, post-*Miranda* silence and about his invocation of his right to counsel. As we explain more fully below, appellant presented these complaints to the trial court, but he did not obtain any adverse rulings. We therefore hold that nothing has been preserved for appellate review.

## SHACKLES

Harris County has a sprawling judicial complex in downtown Houston, with multiple courthouses situated within blocks of Buffalo Bayou. The nearest courthouse to the bayou is the Criminal Justice Center, or "CJC" as it is more commonly known here. Due in part to that proximity, the CJC suffered extensive damage during the flooding brought on by Hurricane Harvey. The other courthouses were spared this damage, and the judges of these neighboring courthouses agreed to share space with the criminal trial courts while the CJC remained closed for repairs.

During the time of the CJC's closure, appellant's case was called for trial at the Harris County Civil Courthouse, which, unlike the CJC, was designed without holdover cells for defendants, like appellant, who remained in custody during the pendency of their trials. Law enforcement officials had implemented certain procedures for transporting these defendants from the county jail to the Civil Courthouse, but on the fourth day of appellant's trial, there was a "hiccup in the system," to borrow the trial court's own words. On the morning in question, before the entire jury had assembled in the jury room, appellant was escorted to the Civil Courthouse by law enforcement, and some members of the jury saw him outside the courtroom when he was still dressed in his jail attire.

Defense counsel promptly alerted the trial court about this sighting, complaining that it undermined appellant's presumption of innocence. But rather than move for a mistrial, counsel requested that the trial court question each juror individually to determine if the juror had witnessed appellant in his jail attire, and if so, to then admonish the juror not to consider the jail attire as any evidence of guilt. Counsel stated that he would only move for a mistrial in the event that a juror indicated that he or she could not set aside any bias from having seen appellant in his jail attire. Counsel also stated that he had advised appellant of his rights and that

2

appellant had agreed to this strategy. The trial court likewise agreed to counsel's plan.

Without employing any leading questions, the trial court examined each juror individually and in open court. Two jurors revealed that as they were arriving for jury duty, they each saw appellant outside the courtroom dressed in an orange jumpsuit. They did not make any specific mention of seeing restraints, handcuffs, or shackles. One of the jurors testified that the sight of appellant in an orange jumpsuit initially made her feel "uneasy" and "a little bit more compassionate" for appellant, but the juror assured the trial court that, at the time of her questioning, she did not harbor "any bias at all." Both jurors testified that they could still be fair and impartial.

Outside the presence of the jury, the trial court found that the jurors' sighting of appellant in his jail attire had been inadvertent, and that there was no appearance of prejudice because both jurors indicated that they could follow the law. The trial court then asked whether defense counsel would be requesting a mistrial. Counsel answered that he would not move for a mistrial, and the trial moved forward according to plan.

Appellant now complains that he was unfairly prejudiced by his appearance in shackles (even though no juror specifically mentioned having seen him in shackles). We can dispose of this complaint on preservation grounds.

To preserve a complaint for appellate review, the complaining party must make a timely complaint to the trial court and obtain an adverse ruling. *See* Tex. R. App. P. 33.1. Defense counsel made a timely complaint here when he alerted the trial court that members of the jury had seen appellant outside the courtroom while dressed in his jail attire. But counsel obtained a favorable ruling from the trial court—he requested, and was granted, a hearing in which the trial court questioned each juror individually about any potential bias from having seen appellant in his jail

3

attire. Counsel did not request any other relief after the hearing. And in fact, counsel specifically stated that he would not seek a mistrial (possibly sensing that he already had a favorable jury after one juror's statement that she had felt "compassionate" towards appellant). Accordingly, the record does not show that appellant suffered an adverse ruling. *See Ex parte Chavez*, 560 S.W.3d 191, 204 (Tex. Crim. App. 2018) (holding that the defendant received a favorable ruling when, in response to a complaint that the jury could see him in shackles, the trial court ordered that a barrier be placed around the defense table to hide the shackles from the jury's sight).

Notwithstanding any issues with preservation, appellant suggests in his brief that a reversal is mandatory whenever the defendant is ordered to wear shackles that will be seen by the jury. But the authority he cites for this proposition holds that the defendant need not demonstrate actual prejudice when he is ordered to appear in shackles inside the courtroom (and that the State must instead prove beyond a reasonable doubt that the shackles did not contribute to the verdict). *See Deck v. Missouri*, 544 U.S. 622, 635 (2005). That authority is not applicable here because appellant did not appear in shackles inside the courtroom. Instead, appellant was sighted outside the courtroom, and even if we assumed that the sighting occurred while appellant appeared in shackles (in addition to his orange jumpsuit), such sightings are governed by a different line of case law. *See Clark v. State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986) ("A momentary, inadvertent, and fortuitous encounter away from the courtroom between a handcuffed accused and one or more of the jurors does not necessarily call for a mistrial or reversal."); *see also Coleman v. State*, 642 S.W.2d 205, 207 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) ("It must be assumed that rational jurors would understand and follow a proper instruction that handcuffing persons in custody for transportation to and from the courtroom is a reasonable precaution that in no way reflects upon the presumption

of innocence or the individual propensities of any defendant." (citing *Wright v. Texas*, 533 F.2d 185 (5th Cir. 1976))).

## RIGHT TO REMAIN SILENT AND RIGHT TO COUNSEL

The next issue arises during the prosecutor's direct examination of an investigator, who established that a vehicle owned by appellant was also involved in the death of the complainant:

Q.     Was it part of the investigation for you that learned Gerald Green owned a white vehicle?

A.     Yes.

Q.     Now, did you ever locate this video—not video. I'm sorry. Did you ever locate this truck?

A.     No, ma'am.

Q.     Did you ever have an opportunity to—or did you give Gerald Green an opportunity to give his side of the story?

A.     Yes, I did.

Q.     And did he—

DEFENSE: I'm going to object, Your Honor, to this line of questioning.

STATE:     Can we approach?

COURT:     Yes.

          (At the Bench, on the record)

COURT:     Did he give a statement?

STATE:     He did not give a statement.

COURT:     What are you trying to get her to testify about?

STATE:     Just that she made contact with him and—

COURT:     If he didn't give a statement, he didn't give a statement. I don't know.

STATE:     I'll rephrase it. I should be allowed to ask, did you make— attempt an effort to ask Gerald Green about what

5

happened, and she should be allowed to say the things that she investigated.

COURT: Was he under arrest at the time?

STATE: He was not.

DEFENSE: He was under arrest in—

COURT: So do you want a hearing outside the presence of the jury?

DEFENSE: I believe it's a comment—

STATE: All I'm just trying to establish is this is an officer who is filing charges without making any type of investigatory attempts—

DEFENSE: You're asking the question to get in front of the jury that he didn't want to give a statement.

COURT: I'm trying to determine whether or not him being in custody is an issue as it relates to his right to remain silent, but he was in custody?

STATE: He turned himself into Montgomery County and was taken into custody. He was notified after the fact—she read him his rights, he said no, he didn't want to speak without an attorney. All I'm trying to establish is that she attempted—

COURT: Why is that relevant?

DEFENSE: It's a comment on—

COURT: What is it relevant towards as it relates to your proving the case? What's the relevancy?

STATE: There has to be some type of law that shows—I mean, at this point, I'll just withdraw and we can move on.

COURT: All right.

(Open court, defendant and jury present)

STATE: Pass the witness.

Appellant now complains in related points that he suffered a deprivation of due process under both the state and federal constitutions by the prosecutor's references to his post-arrest, post-*Miranda* silence, and to his invocation of his right to counsel. These points fail because the jury only heard the prosecutor ask whether

6

appellant had received "an opportunity to give his side of the story." This question did not comment on appellant's right to remain silent or his right to counsel—though defense counsel correctly predicted that the prosecutor was heading in that improper direction. But counsel objected before the prosecutor could finish her next question, and then counsel argued during the bench conference that the prosecutor was attempting to elicit inadmissible testimony. Counsel's objection proved to be successful because, without ever obtaining a ruling from the trial court, the prosecutor decided to abandon her line of questioning and pass the witness altogether.

## CONCLUSION

The trial court's judgment is affirmed.

/s/ Tracy Christopher
   Justice

Panel consists of Justices Christopher, Spain, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).

7