**Ignacio CUEVAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57116.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 20, 1978.

Rehearing Denied Jan. 24, 1979.

Will Gray, Houston, court appointed, for appellant.

Jerry A. Sandel, Dist. Atty., Huntsville, for the State.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of capital murder. V.T.C.A., Penal Code, Sec. 19.03(a)(4). Punishment was assessed at death pursuant to Art. 37.-071, V.A.C.C.P. Venue was changed from Walker County to Harris County.

On July 24, 1974, three inmates of the Texas Department of Corrections, Fred Carrasco, Rudolpho Dominguez, and the appellant, seized the top floor of the educational building inside the Walls Unit at Huntsville. They held a number of people as hostages while Carrasco negotiated with TDC officials. After long negotiations the inmates attempted their escape on August 3, with the hostages and a movable shield constructed from law books, chalkboards and tape. When law enforcement officers sought to prevent the escape, gunfire erupted. In the end, Carrasco, Dominguez and two of the hostages had been killed. The

appellant was charged with the murder of one of the hostages.

In his sixth ground of error appellant contends that the trial court erred in overruling his challenge for cause to venireman James Whorton. Appellant argues that Whorton clearly reveals during voir dire that he would vote to impose the death penalty in all cases where the accused was found guilty of capital murder, unless the accused proved he was insane at the time of the offense.

The record reflects that the appellant was forced to use his last peremptory challenge on venireman Whorton. Appellant then filed a written motion requesting an additional peremptory challenge, which motion was denied. Venireman John Thomas, the eventual foreman, was the last juror seated. At the time Thomas was selected, appellant notified the court that had he been granted an additional peremptory challenge he would have struck Thomas as being an unacceptable juror. These facts place appellant squarely within the rule laid down by this Court in *Wolfe v. State*, 147 Tex.Cr.R. 62, 74, 178 S.W.2d 274, 281:

". . . in the trial of a criminal case where an accused has been wrongfully deprived of a peremptory challenge by being forced to use such upon a juror who was shown to be subject to a challenge for cause, and such accused has exhausted his peremptory challenges, and a further juror be presented whom he states to be objectionable to him, then it will not be necessary for accused to show in what manner such further juror was objectionable to him, nor to show that such juror was an unfair or partial juror. In further words, we think the accused should only be required to exercise a peremptory challenge on the objectionable juror and not a challenge for cause, nor show grounds for a challenge for cause, nor to show why such juror was objectionable to him."

Thus, if appellant can show that the challenge for cause to venireman Whorton should have been sustained and that the overruling of such challenge deprived him of a peremptory challenge he would have used to strike venireman Thomas, this case must be reversed. *Salazar v. State*, 149 Tex.Cr.App. 260, 193 S.W.2d 211; *Bayless v. State*, 166 Tex.Cr.R. 479, 316 S.W.2d 743; *Sifford v. State*, Tex.Cr.App., 505 S.W.2d 866.

Appellant is relying primarily upon Art. 35.16(c)(2), V.A.C.C.P.[1] He primarily contends that both parties, the appellant and the State, have a right to have jurors who believe in the full range of punishment. *Woodkins v. State*, Tex.Cr.App., 542 S.W.2d 855. Appellant argues that Whorton's inability to impose life imprisonment, unless it was shown appellant was insane, demonstrated that Whorton could not consider the full range of punishment.

The relevant portion of venireman Whorton's testimony is as follows:

"Q [BY MR. GRAY]: Well, in every case where you sit as a juror, let's say that you found the defendant guilty of the offense of capital murder, you found that he had intentionally and deliberately killed another person, do you feel that every person that you found guilty of that offense—

A *If he's not insane*, yes, sir.

Q Unless he proved that he was insane, you would assess the death penalty?

A Yes, sir.

Q And you would not even consider life imprisonment then, under those circumstances, after you had found him guilty of the offense of capital murder?

A I don't think so.

&ast;   &ast;   &ast;   &ast;   &ast;   &ast;

Q And you have answered yes to each of the punishment questions, then if you had

---

1. Art. 35.16(c)(2) provides:
"(c) A challenge for cause may be made by the defense for any of the following reasons:
&ast;   &ast;   &ast;   &ast;   &ast;   &ast;
(2) That he has a bias or prejudice against any of the law applicable to the case upon which

the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof or *of the punishment therefor.*" (Emphasis added.)

found him guilty beyond a reasonable doubt of the intentional killing of another person, capital murder.

A   Yes, sir, I believe I would.

Q   And under no circumstances, then, would you answer no to the question?

A   I wouldn't say under no circumstances, I can't think of none off hand.

Q   You can't visualize anything that would permit you to answer no to those questions unless the defendant was insane?

A   I can't think of anything, no.

     \*     \*     \*     \*     \*     \*

Q   Let me make sure that I understand you, Mr. Whorton, and you are the only one that can tell us this.   Mr. Sandel can't answer this for you or the Judge or anybody else.   You feel that in every case where you find a defendant guilty of the offense of capital murder, the proper punishment is death in the electric chair unless he's insane?

A   *I would say yes.*

Q   And let's take a hypothetical case, now, where you found a defendant guilty of the offense of capital murder.   Let's say that both sides put on evidence at the punishment hearing and there's no evidence that would indicate to you that the defendant is insane, then your answer to the two punishment questions, I take it, would be yes?

A   *The evidence showed he's guilty and not insane,* is that what you are saying?

Q   Yes, sir.

A   *I would say yes.*

Q   And you can't visualize any mitigating circumstances other than insanity?

A   None comes to mind, no, sir.

     \*     \*     \*     \*     \*     \*

Q   [BY THE COURT]: Mr. Whorton, what is it you'd require the defendant to prove?   His insanity?   Is that what you said?

A   If he was found guilty of a capital crime, *and other than insanity, I can't think of anything that would.*

     \*     \*     \*     \*     \*     \*

Q   In that case, you wouldn't be requiring the defendant to do anything, so your answers to the two lawyers involved here are opposed.   Have we thoroughly confused you?

A   Well, you have, *other than the fact if the evidence presented by the State were to prove this man incompetent* or whatever, then I wouldn't recommend it."   (Emphasis added.)

At the end of the examination the trial court sought to rehabilitate the prospective juror.   At that time Whorton did state that he could base his answers on the evidence. The statements were inapposite, however, to his previous statements which showed an unwillingness to consider life imprisonment unless the defense of insanity was proven.

The same issue presented by appellant was raised in the recent case of *Smith v. State*, 573 S.W.2d 763 (No. 56,072, delivered December 7, 1977).   In that case, we held:

"The overall picture presented by the voir dire examination of Payne is one of a person holding strong convictions that death is the only punishment he could consider for a person guilty of capital murder, and that life imprisonment is not adequate punishment and would not be considered.

     \*     \*     \*     \*     \*     \*

It is too mechanistic to reason that Payne was a qualified juror because he was willing to require of the State to prove beyond a reasonable doubt the special issues submitted at the punishment stage.   The law requires this and in addition requires that each juror consider the full range of punishment applicable to the offense in question."

Similarly, in the instant case, Whorton indicated that life imprisonment would not be a viable punishment alternative *in the absence of evidence showing insanity*.   The statement by Whorton that he would base his answers to the punishment questions on the evidence does not indicate that he could consider the full range of punishment.   It is conceivable that Whorton could base his answers on the evidence and yet, he could

not consider the minimum punishment of life imprisonment unless that evidence proved appellant insane. Such responses clearly demonstrate Whorton's inability to consider the full range of punishment. We hold that appellant's challenge for cause was improperly overruled. *Smith v. State,* supra; *Wolfe v. State,* supra.

In light of our disposition of appellant's sixth ground of error, we need not address the balance of appellant's contentions.

For the reasons stated, the judgment is reversed and the cause remanded.

VOLLERS, Judge, dissenting.

The majority reverses this cause because it finds that the trial court erred in overruling appellant's challenge for cause to venireman James Whorton. It is the majority's conclusion that voir dire examination of juror Whorton revealed that he would vote to impose the death penalty in all cases where the accused was found guilty of capital murder, unless the accused proved he was insane at the time of the offense. I cannot agree with this conclusion. The record in this cause simply presents another instance where questioning on voir dire managed to confuse a layman and led him into making apparently contradictory answers to questions which are now used as a basis for reversal of this case.

An examination of the entire voir dire in this case reveals that the juror Whorton apparently believed that the definition of capital murder included answering the questions at the punishment phase of the trial "yes." This is apparent even from the limited amount of voir dire testimony set out in the majority opinion, where it reflects that:

"Q. And you have answered yes *to each of the punishment questions,* then if you have found him guilty beyond a reasonable doubt of the intentional killing of another person, capital murder?

A. Yes, sir, I believe I would.

Q. And under no circumstances, *then,* would you answer no to the question?

A. I wouldn't say under no circumstances, I can't think of none offhand.

Q. You can't visualize anything that would permit you to answer no to those questions unless the defendant was insane?

A. I can't think of anything, no." (Emphasis added.)

There can be no question but that the questions to the prospective juror in this case were misleading and his answers were apparently contradictory.

Upon reexamination of this juror by the State, the juror indicated that he would require the State to prove beyond a reasonable doubt that the questions at the penalty stage of the trial should be answered "yes" before he would so answer them. The trial judge recognized the confusion by the juror and entered into the examination. The following examination by the trial judge illustrates his concern over the confusion evidenced by the juror:

*"QUESTIONS BY THE COURT:*

Q. Mr. Whorton, what is it you'd require the defendant to prove? His insanity? Is that what you said?

A. If he was found guilty of a capital crime, and other than insanity, I can't think of anything that would.

Q. Is that what you meant when you answered Mr. Gray's question, you just couldn't conceive of a case where you couldn't answer either of those questions Mr. Sandel directed to you no?

A. Yes, sir.

Q. You understand the State has a burden to prove—it is their burden to prove beyond a reasonable doubt that you should answer these two questions yes.

A. Right. I understand that.

Q. If they don't do that—

A. You answer them no.

Q. You have to answer them no under your oath as a juror.

A. Right.

Q. In that case, you wouldn't be requiring the defendant to do anything, so your answers to the two lawyers involved here are opposed. Have we thoroughly confused you?

A. Well, you have, other than the fact if the evidence presented by the State were to prove this man incompetent or whatever, then I wouldn't recommend it.

Q. I'd like to clear up one point. If the evidence shows he's incompetent or sanity is a defense in the trial, that's an entirely different concept. Now, setting that aside for the moment, unless it's involving your concern with regard to answering these questions here, well, then, it's not relevant to this inquiry that Mr. Gray has directed to you and, that is, it is your attitude with regard to assessing the death penalty which can only be done if you answer those two punishment questions yes.

A. Right. And I would have to be convinced beyond a shadow of a doubt.

Q. Beyond a reasonable doubt before you would answer them yes?

A. Right.

Q. If you answer either of them no, then the Court is obligated to assess life in the penitentiary.

A. Right. Okay.

Q. Now, you are not either called upon to conceive in your own mind any set of facts to what you'd do under any circumstances in a criminal case, but if you have some propensity to assess one punishment, you know the affect of the answers on the punishment questions, would you answer them based on the evidence, or would you answer them based upon your attitude concerning the death penalty or some other?

A. Based on the evidence.

Q. As to what punishment should be—

A. I'd base it on the evidence.

Q. *So your answer to Mr. Gray would be different?*

A. *Yes.*

THE COURT: All right. Overrule the juror's challenge." (Emphasis added.)

From this it is apparent that the prospective juror was confused and gave conflicting answers. The trial court resolved this conflict by his questioning. We must keep in mind that the trial judge is the person who is listening to the prospective juror and we are only looking at a cold record. I still firmly believe that trial judges are vested with some authority to resolve such conflicting answers by prospective jurors, and this record certainly shows no abuse of discretion by the trial judge (see *Smith v. State*, 573 S.W.2d 763 (No. 57,072, delivered December 7, 1977, dissenting opinion). No abuse of discretion is reflected by this record and this cause should not be reversed.

I dissent.

ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ., concur.