**Sam Edward CUMBO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69652.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 27, 1988.

Rehearing Denied Nov. 9, 1988.

---

James Stafford, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr. and Brian Rains, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appellant entered a plea of guilty to the offense of capital murder.[1] After the jury returned its guilty verdict and answered affirmatively the three special issues submitted under Article 37.071, V.A.C.C.P., the court imposed the death penalty as required by law. See Article 37.071(e), supra; V.T.C.A., Penal Code, §§ 12.31 and 19.03.

The indictment alleged that appellant on or about September 12, 1985, "while in the course of committing and attempting to commit the robbery of GEORGE NICK VOINIS, hereafter styled the Complainant, intentionally cause[d] the death of the Complainant by cutting and stabbing the Complainant with a screwdriver."

Appellant does not challenge the sufficiency of the evidence to sustain the conviction[2] nor the affirmative answers to the special issues submitted at the penalty stage of trial.

Briefly the record shows that the deceased, George Voinis, owned and operated the Tip Top Lounge in downtown Houston. It was his usual habit to go to the bank between 11:00 and 11:20 a.m. each morning. George Stafford, whose wife, Louise, operated the laundromat next door to the lounge, saw the deceased Voines return

---

1. See *Williams v. State,* 674 S.W.2d 315 (Tex.Cr. App.1984); *Morin v. State,* 682 S.W.2d 265 (Tex. Cr.App.1983).

2. A plea of guilty to a felony charge before a jury admits the existence of all facts necessary to establish guilt, and in such cases the introduction by the State is to enable the jury to intelligently exercise the discretion which the law vests in them touching the penalty to be assessed. *Darden v. State,* 430 S.W.2d 494, 495 (Tex.Cr.App.1968). The rule applies to capital murder cases. *Williams,* supra (see footnote # 1).

from the bank with a money bag on the morning of September 12, 1985. As the deceased began to unlock the gate to his lounge Stafford observed a man, whom he identified as appellant, running in the street. The appellant jumped onto the curb and told the deceased "I want that money. Give me the money. I'm going to take it anyway." Stafford then saw the appellant begin stabbing the deceased with a "shiny object." He and his wife then ran to the deceased's aid and began hitting at the appellant. During the struggle Louise Stafford told her husband to get help. When he returned with Michal Matthews from a nearby restaurant the appellant fled the scene. Louise Stafford took the money bag the deceased was still holding and assisted her husband in carrying the deceased into the restaurant.

Matthews observed appellant discard a screwdriver as he was fleeing. He retrieved it and turned it over to the police.

Deputy Sheriff Seawood observed the "scuffle" between the appellant and deceased, and chased appellant as he fled and apprehended him.

Dr. Robert Jordan, assistant medical examiner, performed the autopsy on the deceased and expressed the opinion that the cause of death was due to multiple organ system failure resulting from multiple stab wounds.

Fifteen points of error are advanced on appeal. As a result of errors committed during the voir dire examination of the prospective jurors the conviction must be reversed.

In points of error five through twelve appellant complains in each that the trial court erred in overruling his challenge for cause to a named prospective juror who exhibited an inability to fairly consider the full range of punishment and a predisposition to answer "the punishment issues affirmatively."

Article 35.16(c)(2), V.A.C.C.P., provides that a challenge for cause may be made by the defense for the reason that the prospective juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant's being prosecuted or as a mitigation thereof, *or of the punishment therefor.*" (Emphasis added.)

■ A defendant is entitled to be tried by jurors who believe in the full range of punishment authorized by law. *Pierce v. State,* 604 S.W.2d 185, 187 (Tex.Cr.App. 1980); *Woodkins v. State,* 542 S.W.2d 855, 862 (Tex.Cr.App.1976).

An individual adjudged guilty of capital murder is to be punished by death or life imprisonment. V.T.C.A., Penal Code, § 12.31. The penalty to be assessed is determined by the jury's answers to the special issues submitted to the jury in a capital murder case under Article 37.071, V.A.C.C.P.

The record reflects that appellant exhausted his fifteen (15) peremptory challenges allotted him pursuant to Article 35.-15(a), V.A.C.C.P. Thereafter, when appellant's request for two additional peremptory challenges were denied and prospective juror Ronnie Davis was to be impaneled appellant made clear to the court that Davis was an objectionable juror and "totally unacceptable." Likewise, the appellant made clear to the court that the two alternatives chosen were also objectionable jurors.

Appellant claims that in each situation where the court overruled his challenge for cause and about which he complains on appeal he preserved for this Court's review the claimed error. *Hernandez v. State,* 563 S.W.2d 947 (Tex.Cr.App.1978); *Barefoot v. State,* 596 S.W.2d 875 (Tex.Cr.App. 1980), cert. den. 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996.

In *Hernandez,* supra, at 948, this Court quoted from *Wolfe v. State,* 178 S.W.2d 274, 281 (Tex.Cr.App.1944) (Opinion on Rehearing):

"... in the trial of a criminal case where an accused has been wrongfully deprived of peremptory challenge by being forced to use such upon a juror who was shown to be subject to a challenge for cause, and such accused has exhausted his peremptory challenges, and a fur-

ther juror be presented whom he states to be objectionable to him, then it will not be necessary for accused to show in what manner such further juror was objectionable to him, nor to show that such juror was an unfair or partial juror. In further words, we think the accused should only be required to exercise a peremptory challenge on the objectionable juror and not a challenge for cause, nor show grounds for a challenge for cause, nor to show why such juror was objectionable to him."

 Thus, if a challenge for cause to a certain prospective juror is improperly overruled by the trial court and the defense is required to unnecessarily use a peremptory challenge, and later is forced to accept on the jury an objectionable juror because he was deprived of a peremptory challenge, and he has exhausted all his statutorily assigned peremptory challenges the reversible error is normally reflected unless the court grants an additional peremptory challenge. See *Turner v. State*, 671 S.W.2d 679, 680 (Tex.Cr.App.1984).

Needless to say that the appellant in the instant case preserved error in each situation claimed if the court improperly overruled his challenge or challenges for cause.

Points of error number seven presents the question of whether the trial court improperly observed the challenge for cause to prospective juror Darrow Craig Enderli.

At the outset Enderli told the court he had no conscientious scruples against the infliction of death as a proper penalty in a proper case, and that he could be a fair and impartial juror to the State and the appellant alike. In response to voir dire questions Enderli stated that five years earlier a close high school friend was murdered in an attempted robbery occurring at a convenience store, that the defendant got "life" in that case and he (Enderli) wished that "he had gotten the death penalty." When asked by the prosecutor about his feeling or belief in capital punishment he responded "I'm for it," and he had been for it all his life, and that his father and the rest of

the family felt the same way. The prosecutor then asked if his feelings were so strong that as a juror he would feel that everyone found guilty of capital murder ought to receive the death penalty. The record reflects:

"A Yes.

"Q In every case?

"A Yes."

He then indicated to the prosecutor that instead of a neutral position he definitely leaned toward "yes" answers to the special issues[3] after a finding of guilt in a capital murder case, but he could say "no if it was not proven." Thereafter the three special issues were again explained to him and he indicated he had no questions concerning the same.

Enderli told defense counsel that he played high school football with his close friend who was murdered in a Seven Eleven store where he worked. He related his friend was killed during a struggle over a gun with the robber "which would bring in number three issue." He then told appellant's counsel that if a person was found guilty in a robbery/murder situation life imprisonment could never be considered by him as a juror. Enderli also said if positions were switched, he, as an accused or as a defense counsel, would "not really" want someone like him on the jury. When asked if his feelings would influence his decision making quality in answering the special issues, he answered:

"It would be very difficult. If I was chosen and not given a choice I would do the best of my ability to keep my judgments as the law desires. Given the opportunity to express it you know if I have a choice I would rather not serve."

He then reiterated that he could not consider life imprisonment as a proper punishment after a person is found guilty of capital murder.

Enderli indicated to appellant's counsel that if he had the same evidence on which a defendant had been found guilty that in all fairness he probably could not ever answer

3. See Article 37.071(b)(1), (2) and (3), V.A.C.C.P.

question (special issue) number one "no." The record then reflects:

"Q So in that situation you have a bias or a prejudice against my side.

"A Yes.

"Q When it was applying the law to the evidence to question number one, isn't that true?

"A Yes."

Enderli then told appellant's counsel he could not visualize a situation where he could answer "no" to question number three, particularly in light of the incident involving his friend.

Thereafter appellant's counsel challenged for cause because Enderli did not believe life imprisonment would be a proper punishment for capital murder, and with regard to special issues one and three Enderli had a bias or prejudice against a phase of the law upon which appellant was entitled to rely, and that the incident concerning his close friend would make it difficult for him to be a fair juror in the cause.

The challenge was overruled.

The court itself then "lectured" the prospective juror.

"... We do have traits that make us unfair in certain things and probably there's no one harder thing to do than stand up and acknowledge that we have a bias or a prejudice. Whether we can be fair. *That's just horrible to say we can't be fair, isn't it?*

"A Yes, sir.

"Q *Just almost makes you feel if you stand up and you say I'm biased or prejudiced, can't give a fair trial in a criminal case it's almost un-American, isn't it? Almost puts you in the class of a communist* and this is not true. To the contrary those people that can fight that and can acknowledge what the truth of the matter is are in my estimation are more highly respected by far. It takes a lot better person. We can find all kinds of reasons oh, we'll try to, I'll do the best I can. You've got a real problem. *You have a bias, you have a prejudice and you've had an unpleasant experience.* Is this going to affect you in your

answers to one of those three questions if you were selected as a juror?

"A No, sir." (Emphasis supplied.)

Enderli then told the court that if selected that it "would be my job to do [it] to the best of my ability." The court stated the "best of your ability" portion bothered the court and it asked Enderli if he had said anyone guilty of capital murder ought to receive the death penalty and Enderli replied, "Yes, sir." The court then asked what Enderli meant when he told the defense counsel that if places were switched he wouldn't want someone like him on a jury. The record reflects:

"A I would feel the same way anybody would. I would feel like that that person might not live up to what he's supposed to live up to as being a juror and being fair and listening to all of the questions and getting the facts and letting her own emotional personal feelings take over and overrule his judgment at times.

"Q You would not want to gamble?

"A I wouldn't want to take a chance."

Thereafter Enderli in response to the court's questions agreed he could personally "put that aside" and perform his duty and follow his oath.

Upon further questioning by appellant's counsel Enderli again said it would be impossible to answer the first question "no" if the same evidence at the guilt stage was before him, keeping in mind that he didn't think life imprisonment was a proper punishment.

Counsel renewed the challenge for cause and it was again overruled.

In *Cuevas v. State,* 575 S.W.2d 543 (Tex. Cr.App.1979), and *Smith v. State,* 573 S.W. 2d 763 (Tex.Cr.App.1978), the challenged veniremen were thoroughly questioned as to whether they could consider life imprisonment for a defendant found guilty of capital murder. The veniremen repeatedly indicated they would not consider life imprisonment in such a situation and evidence a strong conviction that death is the only appropriate punishment for one found

guilty of capital murder. Under those circumstances, we held that the veniremen could not be rehabilitated by ritually reciting that they would "follow the evidence" in considering the special punishment issues. Cf. *Janecka v. State*, 739 S.W.2d 813, 832 (Tex.Cr.App.1987).

In the instant case, as can be observed, the prospective juror Enderli evidenced a strong conviction that death ought to be the appropriate penalty for one convicted of capital murder and that he could not consider life imprisonment for capital murder. He further evidenced that he would have difficulty in ever answering special issues numbers one and three. Enderli clearly was not rehabilitated by the court's "lecture" and his answers that he could put "that aside," do his duty as a juror and follow his oath.

◼ Where a prospective juror states his belief that he can set aside any influences and personal bias he may have, and the court overrules the challenge for cause, the court's decision will be reviewed in light of *all* the answers given. *Faulder v. State*, 745 S.W.2d 327 (Tex.Cr.App.1987); *Cordova v. State*, 733 S.W.2d 175, 182 (Tex.Cr.App.1987); *Mays v. State*, 726 S.W.2d 937, 950 (Tex.Cr.App.1986); *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Cr.App.1982). When, however, a prospective juror is shown to be biased as a matter of law, he *must* be excused when challenged, even if he states that he can set his bias aside and provide a fair trial. *Cordova*, supra, at 182; *Clark v. State*, 717 S.W.2d 910, 916, 917 (Tex.Cr.App.1986); *Anderson*, supra, at 854; *Willaims v. State*, 565 S.W.2d 63, 65 (Tex.Cr.App.1978); *Hooper v. State*, 100 Tex.Cr.R. 147, 272 S.W. 493, 495 (1925).

◼ The trial court erred in overruling the challenge for cause. *Cuevas*, supra; *Smith*, supra. The appellant was forced to unnecessarily use a peremptory challenge, and having exhausted his allotment of such challenges was required to accept an "objectionable" juror on the jury. Appellant preserved his error.

◼ In points of error five and eight appellant also complains the trial court erred in overruling challenges for cause to prospective jurors Reynolds and Woodall. Like Enderli they agreed death was an appropriate penalty for capital murder, but they would not consider life imprisonment as a proper punishment for capital murder. They vacillated on their answers to questions about the special issues. The attempts to rehabilitate them elicited answers they would not automatically vote "yes" to the special issues offered and would consider the evidence. Strangely no direct attempt was made to rehabilitate Reynolds and Woodall concerning their refusal to consider life imprisonment as a proper punishment or to have them agree to consider the full range of punishment for capital murder.[4] The court erred in overruling the challenges for cause and the errors were preserved. *Cuevas*, supra; *Smith*, supra.

In point of error number ten appellant complains the trial court erred in overruling his challenge for cause to prospective juror William J. Plexco who exhibited an inability to fairly consider the full range of punishment and predisposition to answer the punishment issues affirmatively.

◼ Plexco had difficulty with special issue number three. He told the prosecutor during the voir dire examination that he believed he would always answer the issue "yes" regardless of the evidence "because only one person created that incident."[5]

After further instruction as to the law Plexco stated, "I have a personal belief that the defendant doesn't have a leg to stand on. He precipitated the whole thing." The record further reflects:

"(2) * * *
"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased...."

---

4. The same was true in Enderli's interrogation.

5. Article 37.071(b)(3):
"(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:
"(1) * * *

"A In the absence of a law that's true I can't believe that the deceased can ever provoke his own death in this kind of situation you described.

"Q So personally if it came down to issue number three, personally you don't believe that a defendant, a robber has any leg to stand on when it comes to this?

"A Right."

Plexco later indicated he could look at the issue and the court's instruction to consider the evidence "if the law says that." In response to questions by appellant's counsel the record reflects:

"Q Would you consider provocation?

"A Would I consider provocation?

"A Would I consider personally, I don't think there is any. If the law says I have to.

\* \* \* \* \* \*

"Q ... But wouldn't you agree with me that once you got to the punishment stage to apply the law and the evidence to this question that you would be leaning toward answering that question yes?

"A Yes.

"Q So you pretty well would be predisposed?

"A I would certainly be leaning in that direction.

"Q So basically you would have a bias or a prejudice against the defendant as it applies to issue number three at that particular time?

"A As it has been described to me and as I understand it, yes.

"Q And that feeling would probably be true in each and every case if you were on a capital murder as it applies to issue number three.

"A Yes."

The applicant then challenged for cause because the prospective juror "has a bias and prejudice against the phase of law that we're entitled to rely on. See Article 35.-16(c)(2), supra.

The court then inquired:

"Q Would you let that bias or prejudice affect your verdict just because you dislike that law? Would you let it affect your verdict or would you follow the law?

"A I would follow the law in every instance as I understood the law, yes.

MR. STAFFORD (defense counsel): And also that he would be predisposed as to—

"THE COURT: What says the State?"

The State accepted the juror and the appellant exercised a peremptory challenge.

As earlier observed, where a prospective juror states that he can set aside his influences and personal bias he may have, and the trial court overrules the challenge for cause, the court's decision will be reviewed in light of all the answers given. *Faulder,* supra, and other cases earlier cited. When a juror is shown to be biased as a matter of law he *must* be excused if challenged, even if he says he can set his bias aside and provide a fair trial. *Cordova,* supra. We conclude from a review of the voir dire examination of prospective juror Plexco, that the trial court erred in overruling the challenge for cause. The appellant was forced to use a peremptory challenge leading to the exhaustion of his alloted number of such challenges and the acceptance of an "objectionable" juror.

The errors here involved the selection of the jury who would be called upon to pass upon the punishment issues. The record before this Court leaves us no choice under the law.

For the reversible errors discussed, the judgment is reversed and the cause remanded.

McCORMICK, J., concurs in the result.

WHITE, J., dissents.

CLINTON, J., dissents joined by CAMPBELL, J.

CLINTON, Judge, dissenting.

By his reliance upon *Cuevas v. State,* 575 S.W.2d 543 (Tex.Cr.App.1979), and *Smith v. State,* 573 S.W.2d 763 (Tex.Cr.App.1978), to find the trial court erred in failing to sustain appellant's challenge for cause, I

presume that Presiding Judge Onion, writing for the majority, believes that venireman Enderli evinced an irredeemable bias against the law in that he could not consider the entire range of punishment applicable in a capital case. I had thought that in *Hernandez v. State*, 757 S.W.2d 744, (Tex. Cr.App., No. 69,649, delivered June 29, 1988), albeit in a plurality opinion, we had put to rest the notion that a capital venireman is subject to challenge for cause merely because he categorically opposes imposition of either the death penalty, or for that matter, as here, life imprisonment. In the context of special issues capital jurors are not called upon to consider range of punishment, but only to answer special issues honestly and without conscious distortion or bias. Only if it finds that a venireman's categorical opposition to the death penalty or life imprisonment would create a substantial likelihood of such distortion or bias may the trial court reasonably conclude the venireman is impaired. To the extent of conflict, *Smith* and *Cuevas* have been overruled. *Hernandez v. State*, supra, at p. 751–52.

The majority nevertheless holds that Enderli is biased as a matter of *law*, and that no amount of assurance that he could set that aside may be heard. Cited in support of this proposition are, *inter alia*, *Cordova v. State*, 733 S.W.2d 175 (Tex.Cr. App.1987), *Clark v. State*, 717 S.W.2d 910 (Tex.Cr.App.1986), and *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982). All derive ultimately from *Hooper v. State*, 100 Tex.Cr.R. 147, 272 S.W. 493 (1925). The bias harbored by the venireman in *Hooper*, supra, was one "in favor of or against the defendant" under then Article 692, subdivision 12. See now Article 35.16(a)(9), V.A.C. C.P. Contrasting the venireman who does not personally know an accused, but who "through hearsay, or otherwise," has formed an opinion as to his guilt, which venireman may yet serve if he convinces the trial court his opinion will not influence his verdict, see now *Id.* § (a)(10), the Court in *Hooper*, supra, observed:

"There is a fundamental distinction between prejudice on the part of a juror and the entertaining of an opinion on his part. When it appears that the feeling had by the proposed juror is really one of prejudice, and that it is directed toward the accused, it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice, etc. It is easily possible for one who entertains a deep-seated prejudice to believe himself able to lay it aside, but human experience teaches the contrary."

272 S.W. at 495. In *Anderson v. State*, supra, the Court reaffirmed this policy, holding that when the evidence indisputably reveals a bias on the part of a potential juror *against the accused*, no assertion on his part that he can overcome that bias will prevail. See also *Gonzales v. State*, 169 Tex.Cr.R. 49, 331 S.W.2d 748 (1960); *Williams v. State*, 565 S.W.2d 63 (Tex.Cr. App.1978).

In *Clark* and *Cordova*, both supra, the Court extended *Anderson, sub silentio,* to hold that veniremen who are biased against *the law, as a matter of law,* may not be rehabilitated simply by stating they can put that bias aside. To my way of thinking this extension of the *Hooper* policy was ill-advised. Human experience does not teach that a juror can never follow a law he dislikes anymore than it teaches he cannot ignore a conclusion he has reached through extrinsic sources and render a verdict in accordance with the evidence.

At any rate, *Anderson*, supra, and hence, *Clark* and *Cordova*, both supra, still leave the assessment of whether a venireman has shown himself to be biased "as a matter of law" to the trial court. This is really only to say that in some cases the venireman's bias may not be completely self evident, and the trial judge will have to make a judgment call as to whether the venireman is in fact prejudiced—which is really to say that the venireman is not biased "as a matter of law," for if he were, there would be no call for the trial court to exercise its discretion. Such confusion of terminology has led this Court to err in the instant cause.

A venireman who confesses, as did Enderli initially, that he feels anyone guilty of

capital murder should be punished by death, has not shown himself incapable of answering special issues without conscious distortion. That such a venireman would "lean" toward affirmative answers likewise does not disqualify him; for as was pointed out in *Hernandez v. State*, supra, at 751:

> "[T]o the extent that a juror's categorical rejection of the death penalty might influence him not to find beyond a reasonable doubt a probability of future dangerousness, even given evidence which would be held sufficient by a person unopposed to capital punishment, he is eligible for jury service. [Footnote omitted.] Likewise, one whose beliefs favoring the death penalty might influence him to more readily find a probability of future dangerousness is equally qualified for jury service in a capital case."

It is not remotely dispositive of the challenge that Enderli could not "consider" life imprisonment, since he would not be called upon to do so. Furthermore, that Enderli would not desire someone like himself on his jury if he were accused of capital murder means nothing. Peremptory challenges are designed for excluding such veniremen, at the option of either party.

It is true Enderli indicated that having found an accused guilty of capital murder, he probably could never answer special issue one negatively. It is also true, however, that he told the trial court during what the majority calls a "lecture," that whatever bias had been engendered by the death of his friend would not affect his answers to special issues, and that he could "put that all aside" in performing his duty as a juror. The majority finds that Enderli was "clearly" not rehabilitated. It is not so clear to me he was not, and obviously the trial court believed that he was. This was simply a "vacillating" venireman. In other contexts we have been quick to defer to the judgment of trial courts when, under sufficiently precise questioning a venireman proves himself "to be genuinely noncommittal, vacillating, equivocal, or uncertain[,]" *Hernandez v. State*, supra, at 753, and the court grants a challenge for cause. There is no reason we should not afford the trial court the same deference

when it rules against a defendant's challenge in the face of a genuinely vacillating venireman. The proper questions were asked here, *viz:* whether his opposition to life imprisonment would cause Enderli to thwart the law by answering special issues in accordance with his bias, irrespective of the evidence. Enderli gave conflicting answers. Under such circumstances we should uphold the trial court's ruling *either* that the venireman is impaired *or that he is not.*

The majority's dispositions of points pertaining to veniremen Woodall, Reynolds and Plexco suffer from the same infirmities as those outlined above.

I therefore respectfully dissent.

CAMPBELL, J., joins.