**Terry Allan WATKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–90–00277–CR.**

Court of Appeals of Texas,
Tyler.

Oct. 14, 1993.

Rehearing Denied Feb. 8, 1994.

17

John Heath, Nacogdoches, for appellant.

James Cromwell, Dist. Atty., Rusk, for appellee.

Before BILL BASS, J., and PAUL S. COLLEY, Retired J.[1]

### OPINION ON STATE'S MOTION FOR REHEARING

BILL BASS, Justice.

The previous opinion delivered on May 28, 1993 is withdrawn and set aside, and the following opinion is entered in lieu thereof.

On original submission, we held that the evidence was insufficient to convict Appellant of capital murder. Appellant's *capital murder for remuneration* conviction was reversed and we ordered an acquittal. *Watkins v. State,* No. 12–90–00277–CR (Tex. App.—Tyler, May 28, 1993, n.w.h.). On June 11, 1993, the State filed its "Motion for Rehearing" which we hereby grant.

---

1. Paul S. Colley, Justice (Retired), Tyler Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

■ In its motion for rehearing, the State urges that, instead of ordering an acquittal, we should have, and were authorized to, reform the judgment to reflect a conviction for the lesser included offense of murder and remand to the trial court for punishment only. In light of the recent decision by the Court of Criminal Appeals, *Bigley v. State,* 865 S.W.2d 26 (Tex.Crim.App.1993), we agree with the State. However, before we can reform the judgment on Watkins' insufficiency point of error, we must first consider Watkins' other points of error that we were not required to address in our original opinion, due to our decision to reverse and acquit.

■ In his third point of error, Watkins complains that the trial court erred in denying his request to reopen the evidence after both sides had rested, but before the charge was presented to the jury. Watkins contends that had the court reopened the evidence, he could have presented evidence that had just come to his attention that would show a conspiracy between the victim's wife, Rita Hicks, and Chris Parsons, an Alto constable, to cover-up Rita Hicks' involvement in the murder. Parson was working with the District Attorney on the Watkins case. Following argument by both sides, the trial court denied Watkins' motion to reopen the evidence.

■ Our review of the trial court's ruling begins with the premise that the decision whether to reopen is left to the sound discretion of the trial court. *Holifield v. State,* 599 S.W.2d 836, 837 (Tex.Cr.App.1980). The trial court's decision, however, is subject to review for abuse of discretion. *Cain v. State,* 666 S.W.2d 109, 111 (Tex.Cr.App.1984). The CODE OF CRIMINAL PROCEDURE provides that the trial court *shall allow* the introduction of testimony at any time before the conclusion of arguments in the case if it appears necessary to the due administration of justice. TEX.CODE CRIM.PROC.ANN. art 36.02 (Vernon 1981). It has been held that a motion is sufficient if it meets the following criteria:

(1) The request is made in a timely fashion;

(2) The witness is present and ready to testify; and

(3) The testimony is material and bears directly on the main issues in the case. *Cain v. State,* 666 S.W.2d at 111.

■ In order for a reviewing court to determine whether the trial court abused its discretion in denying a defendant's motion to reopen, the defendant must show that the proposed testimony would have materially changed the case in his favor. *Gray v. State,* 797 S.W.2d 157, 160 (Tex.App.—Houston [14th Dist.] 1990, no pet.); *Arteaga v. State,* 757 S.W.2d 158, 159 (Tex.App.—San Antonio 1988, no pet.); *Conner v. State,* 725 S.W.2d 457, 459 (Tex.App.—Beaumont 1987, no pet.).

In support of his motion to reopen, Watkins' attorney made statements, which indicated the speculative nature of the proposed evidence: "I'm not saying this is evidence ... *the evidence may show* and again I'm not purporting to say it, but I'm just saying *it might show....*" The argument was vague, general, and unconvincing that the proffered evidence was material to the defendant's case. It is not clear from the attorney's argument on what defensive theory Watkins claimed the proffered evidence supported.

Following the punishment phase of the trial, the trial court permitted Watkins to offer the proposed evidence in a bill of exception. Watkins called to the witness stand Tim Taylor, a former investigator for the prosecution. Taylor's testimony revealed that, in his view, there were some unfinished areas of investigation, particularly with regard to Rita Hicks. Rumors surfaced during the investigation that Mrs. Hicks and Chris Parsons were having an affair. Taylor testified that the district attorney denied Taylor's access to Mrs. Hicks. Furthermore, Watkins' attorney attempted to draw testimony from Taylor that the district attorney took him off the case after Taylor tried to interview Mrs. Hicks and the D.A. blocked it. However, Taylor testified that he was never told that his services were no longer needed; the D.A. even instructed Taylor to do further investigation. Although the district attorney may have directed Taylor to turn over the investigation of Mrs. Hicks to the D.A. himself, Taylor admitted that he did not know whether or not the D.A. thereafter investigated or interviewed Mrs. Hicks.

We cannot conclude that the trial court abused its discretion in refusing to reopen the evidence after both sides had rested. Watkins was unable to articulate how the proposed evidence was material to Watkins' defense. The speculative testimony of Taylor, likewise, was not clearly material, nor did it bear directly on the main issue: Watkins' guilt or innocence. Point of error three is overruled.

■ In point of error four, Watkins complains that the trial court erred in overruling his motion for mistrial, the basis of which was the prosecution's failure to disclose exculpatory evidence.

In reviewing the trial court's decision to overrule Appellant's motion for a mistrial, we must look to the law governing disclosure by the State to the accused of evidence favorable to the accused. A due process violation under the fourteenth amendment occurs "when a prosecutor (1) fails to disclose evidence (2) which is favorable to the accused (3) that creates a probability sufficient to undermine the confidence in the outcome of the proceeding." *Thomas v. State,* 841 S.W.2d 399, 404 (Tex.Cr.App.1992).

In this case, Watkins contends that the prosecutor had knowledge that Rita Hicks and Chris Parsons, instead of going directly from the feed store to the Watkins' house as they testified, went first to Parsons' house to get his gun. This evidence became known to Watkins during the trial. Watkins was able to develop fully his theory that Parsons and Mrs. Hicks were conspiring against him. Chief Deputy Don Anderson testified that Chris Parsons told him soon after the murder that he forgot his gun when he went to the feed store to take Rita Hicks home. After picking up Rita, Parsons and Mrs. Hicks, according the Anderson's testimony, went back to his house to get his gun. Anderson testified that he thought he had discussed this with the district attorney, and assumed the defendant knew this as well, but did not think it was relevant at the time. The district attorney agreed that the information was not disclosed to the defendant.

Because Watkins learned of the "undisclosed" evidence during trial, the trial court gave Watkins every opportunity to use Anderson's testimony to impeach Parson and Mrs. Hicks' account of the events. Watkins did not request a continuance in order to prepare to develop his theory before the jury. We cannot conclude that the prosecutor's failure to disclose the information was harmful to Watkins. Watkins failed to establish in the record what he would have done differently had the information been disclosed before trial, or how its disclosure would probably have affected the verdict. Therefore, the "undisclosed" evidence did not create a probability sufficient to undermine the confidence in the outcome of the proceeding. Point of error four is overruled.

■ In his fifth point of error, Watkins argues that the trial court erred when it granted the State's challenge for cause of juror Estrella Chavez based on her views on the death penalty. Watkins insists that although Chavez expressed opposition to the death penalty, she stated that she could follow the law as given by the court and answer the required question; the granting of the State's challenge for cause, therefore, was in violation of the UNITED STATES CONSTITUTION under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, since the jury assessed punishment at life imprisonment, and not the death penalty, then *Witherspoon* is inapplicable; error, if any, was harmless. *Phelps v. State,* 594 S.W.2d 434, 437 (Tex.Cr.App.1980); *See Sanne v. State,* 609 S.W.2d 762, 768 n. 3 (Tex.Cr.App.1980). We overrule point of error five.

In points of error six through fourteen, Watkins complains that the trial court erred in failing to grant his challenges for cause of nine individual jurors, forcing him to use a peremptory challenge on each of the nine jurors. In *Cumbo v. State,* the Court of Criminal Appeals explained when an overruled challenge for cause is reversible error:

1. challenge for cause was a proper, valid challenge and should have been sustained;

2. defendant was forced to use unnecessarily a peremptory challenge;

3. defendant later was forced to accept on the jury an objectionable juror because

he exhausted all his statutorily assigned peremptory challenges; and

4. the trial court failed to grant additional peremptory challenges.

*Cumbo,* 760 S.W.2d 251, 254 (Tex.Cr.App. 1988). Watkins preserved error for appeal by ensuring that the record reflected that he was forced to use all his peremptory challenges after the trial court overruled each of his challenges for cause. Furthermore, the record reflects that an objectionable juror sat on the jury after the trial court denied Watkins any further peremptory challenges. The only issue before us, therefore, is whether the trial court improperly overruled Watkins' challenges for cause of the nine jurors.

■ When bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that a prospective juror is disqualified and should be excused. *Anderson v. State,* 633 S.W.2d 851, 853 (Tex.Cr.App.1982). Watkins objected to each of the nine jurors for the same reason: they could not accept all the applicable law.

■ With regard to jurors William J. Cook, Jack D. Woodson, and James Houser, Watkins failed to allege any *facts* which rendered the jurors incapable or unfit to serve on the jury. Nor does he state in his brief how the three jurors indicated an unwillingness or inability to accept all the applicable law. Therefore, Watkins has failed to preserve error for appeal. *Barney v. State,* 698 S.W.2d 114, 123 (Tex.Cr.App.1985). Furthermore, from our own review of the record, we cannot conclude that the three jurors were incapable or unfit to serve. Points of error six through eight are overruled.

■ Watkins stated to the trial court that he was challenging for cause juror Kathleen Cook because she showed a preference for the death penalty in a capital case, over life imprisonment. A juror is qualified, despite opposition to or support for the death penalty, if the juror unequivocally demonstrates that he or she is able to set aside this viewpoint when deciding both guilt and punishment. *Cordova v. State,* 733 S.W.2d 175, 184 (Tex.Cr.App.1987). While indicating a preference for the death penalty in cases involving "heinous" acts, Ms. Cook repeatedly affirmed that she could consider the full range of punishment in any case, and she would follow the court's instructions. The trial court did not err in overruling Watkins' challenge for cause of juror Kathleen Cook. Point of error nine is overruled.

■ Watkins objected to jurors John David Westbrook and David Hendley because both jurors could not clearly state a distinction between "intentionally" and "deliberately." Watkins argues that the jurors, after finding that the defendant had intentionally caused the death of a human being, would not feel compelled to determine during the punishment phase whether the act was done deliberately. Watkins' counsel asked juror Westbrook the following:

Q: Do you make any distinction in your mind between deliberately bringing about the death of another and knowingly and intentionally bringing about the death?

A: Any difference?

Q: Yes.

A: No, sir.

Likewise, juror Hendley could not identify a difference between the two words, though he affirmed that he would abide by the court's instructions and any definitions of the terms. We do not believe jurors Westbrook and Hendley's inability to articulate a distinction between the terms "intentionally" and "deliberately" indicates that the juror believed that the State would not have to prove guilt beyond a reasonable doubt, as Watkins argued to the trial court. Few jurors would be qualified to sit as jurors if they each were required to state the subtle differences between the terms.

Watkins also objected to Westbrook and Hendley on grounds that they could not "consider at least one aspect of mitigation that we believe that the defendant is entitled to rely on." Again, Watkins has failed to point specifically to the record in support of this objection, nor can we find in the record of Westbrook nor Hendley's voir dire even a hint that the jurors may have refused to

consider mitigating factors. Points of error ten and eleven are overruled.

■ Watkins challenged juror Leonard Berry for cause on the ground that Berry "believed and had a preference for a death penalty." Our review of the record reveals that the juror stated that he believed the death penalty to be appropriate in some cases. Nothing in the record indicates such a strong support for the death penalty that he would not be able to set aside this viewpoint when deciding both guilt and punishment. *See Cordova v. State*, 733 S.W.2d 175, 184 (Tex.Cr.App.1987). Point of error twelve is overruled.

■ Juror Myra Phares was challenged for cause on the grounds that she held an impermissible viewpoint toward convicted rapists and premeditated murderers, and she showed a preference for the death penalty. While Mrs. Phares showed a victim-oriented viewpoint with regard to punishing criminals, she also affirmed that she could set aside those viewpoints and follow the court's instructions as they would be given to her. The record does not show that Juror Phares was disqualified because of her inability to accept the applicable law, as Watkins suggests. Point of error thirteen is overruled.

■ Watkins objected to Juror John L. Loudermilk on the basis that the juror had a preference for the death penalty. Loudermilk testified that he would favor the death penalty in especially hideous cases, such as killing of school children, raping then murdering a woman, molesting then murdering a child. Loudermilk also was unequivocal in affirming that he would follow the court's instructions and would consider the mitigating circumstances. We overrule Watkins' fourteenth point of error.

■ In his fifteenth and final point of error, Watkins argues that the trial court erred in failing to grant his request for additional peremptory strikes, forcing him to accept juror Sherry Miller and other jurors, which Watkins found objectionable. A court's refusal to grant additional peremptory challenges is reversible error only if it can be shown that (1) a prospective juror was "challengeable for cause"; (2) the overruling of the challenge deprived appellant of a peremptory challenge; and (3) the appellant would have used a peremptory challenge to strike a named juror who was objectionable to appellant. *Turner v. State*, 671 S.W.2d 679, 680 (Tex.App.—Dallas 1984, pet. ref'd); *See Wolfe v. State*, 147 Tex.Crim. 62, 178 S.W.2d 274 (Tex.Cr.App.1944). We have found that the trial court did not err in denying each of Watkins' challenges for cause; none of the objectionable prospective jurors were "challengeable for cause." Therefore, the court did not commit reversible error in refusing to grant additional peremptory strikes. Point of error fifteen is overruled.

When we delivered our original opinion, we found that the evidence was insufficient that Watkins murdered for remuneration. Watkins did not argue that the evidence was insufficient that he committed the lesser included offense of murder. Therefore, we were not presented with the question of the sufficiency of the evidence for ordinary murder. Nevertheless, we found, at least implicitly, the evidence to be sufficient to support the lesser included offense of ordinary murder. Throughout our original opinion, we noted the abundance of evidence on which a juror could have relied to conclude beyond a reasonable doubt that Watkins was guilty of the offense of murder.

Since our original opinion was delivered, the Court of Criminal Appeals, in *Bigley v. State*, 865 S.W.2d 26 (Tex.Crim.App.1993), held that Rule 80 of the TEXAS RULES OF APPELLATE PROCEDURE authorizes intermediate courts of appeals to reform judgments to reflect a conviction of a lesser included offense. The majority in *Bigley* did not address whether the absence of a lesser included offense instruction would preclude an intermediate court from exercising its power to reform a judgment such as this. Nevertheless, we note that in the case before us, the trial court submitted to the jury an instruction on the lesser included offense of murder.

Having concluded the evidence to be sufficient for a conviction for murder, we reform the judgment of the trial court to reflect Appellant's conviction of murder and remand

the cause so that punishment can be assessed.

HOLCOMB, C.J., not participating.